PEDRO J. MALDONADO DEL VALLE, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, demandado; LUZ MARÍA VÁZQUEZ, interventora.

*Número*: O-68–265     *Resuelto*: 27 de enero de 1972

*José F. Quetglas Alvarez* y *Francisco M. Vázquez Santoni*, abogados del peticionario; *Benicio Sánchez Castaño, Benicio Sánchez Rivera, Gustavo Adolfo Del Toro* y *Ana R. Rodríguez Olazagasti,* abogados de la interventora.

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

Consideramos en este recurso si en nuestro ordenamiento jurídico una pensión de retiro adquirida durante el matrimonio debe reputarse como un bien ganancial o como un bien privativo. Los hechos pertinentes fueron estipulados por las partes.

Pedro J. Maldonado casó con Luz María Vázquez el 29 de noviembre de 1946. A la sazón Maldonado llevaba 3 años y 5 meses prestando servicios en el ejército de los Estados Unidos. Veinte años después, en septiembre de 1963, se jubiló con el rango de Comandante y una pensión por retiro de $391.87. El vínculo matrimonial entre ellos se disolvió por sentencia de divorcio el 13 de septiembre de 1966.

Fundándose en *Rivera* v. *Rodríguez*, 93 D.P.R. 21 (1966), el tribunal de instancia resolvió que la pensión debía reputarse como un bien ganancial por haberse adquirido durante el matrimonio. En consecuencia determinó que la mitad de la pensión le correspondía a la aquí interventora Luz María Vázquez. [1]

Una aclaración es de rigor. *Rivera* v. *Rodríguez*, supra, no envuelve la determinación del carácter de una pensión por retiro. Dicho caso se refiere al carácter de unos bonos federales adquiridos con dinero procedente de los pagos periódicos recibidos por el marido con motivo de una incapacidad sobrevenídale durante el matrimonio. Resolvimos en dicho caso que los pagos periódicos provenientes de una pensión por incapacidad constituían activos de la sociedad de gananciales. El fundamento de nuestra decisión fue que los pagos periódicos sustituían los ingresos que pudieron haberse percibidos de no haber ocurrido la incapacidad. Esto es, sustituían los salarios, que como tales, se reputan gananciales. Art. 1301 Código Civil, 31 L.P.R.A. sec. 3641. [2]

---

[1] No se ha liquidado todavía la sociedad de gananciales cuyo activo cuenta, entre otros bienes, una casa ubicada en la Urbanización Garden Hills, otra en la Urbanización San Francisco, y un negocio de reparación de automóviles.

[2] "Son bienes gananciales:

(1) Los adquiridos por título oneroso durante el matrimonio a costa de caudal común, bien se haga la adquisición para la comunidad, bien para uno solo de los esposos.

(2) Los obtenidos por la industria, sueldo o trabajo de los cónyuges o de cualquiera de ellos.

Igualmente se reputan gananciales los bienes que con ellos se adquieran. *Id.* Como los bonos fueron adquiridos *durante el matrimonio* con dinero procedente de los pagos periódicos se reputan como un bien ganancial. No llegamos a considerar el carácter de los pagos periódicos una vez disuelto el matrimonio. Pero es obvio que si sustituyen los ingresos que se hubiesen percibido durante el matrimonio de no haber ocurrido la incapacidad, al disolverse la sociedad de gananciales, dichos ingresos, como salarios al fin, pierden el carácter ganancial y vienen sólo a acrecer el patrimonio del que los percibe. Por eso, al asemejar el tribunal de instancia en el caso de autos los pagos de la pensión por retiro a los pagos periódicos de una pensión por incapacidad, venía obligado por la consecuencia lógica de tal tratamiento, a declarar privativo los pagos de la pensión de retiro, una vez disuelta la sociedad de gananciales. Resolvió lo contrario.

Hecha la anterior aclaración, procederemos a considerar el carácter de la pensión o anualidad de retiro por años de servicios, que es la cuestión aquí envuelta.

La estipulación suscrita por las partes meramente expresa que se trata de una pensión por retiro del Ejército de los Estado Unidos. No especifica el tipo de pensión ni la ley de su creación. A los fines del caso asumimos que se trata de la anualidad por años de servicios regulada por el Capítulo 367 del Título 10 del Código de los Estados Unidos, Secs. 3911 a 3929. La Sec. 3911 de este título provee para la jubilación de un oficial del Ejército de los Estados Unidos, después de 20 años de servicios, de los cuales, por lo menos 10 años hayan sido servidos como un oficial comisionado. La Sec. 3991 establece la fórmula de computación para la anualidad a base de la paga básica mensual multiplicada por el dos y medio por ciento de los años de servicios acreditables. También se esta-

---

(3) Los frutos, rentas o intereses percibidos o devengados durante el matrimonio, procedentes de los bienes comunes o de los peculiares de cada uno de los cónyuges.—Código Civil, 1930, Art. 1301."

blece un plan de protección para la familia de los soldados retirados. A tenor con dicho plan, el participante puede al retirarse elegir el percibo de una anualidad por retiro menor de la que tiene derecho y proveer con la diferencia, según determinación actuarial, una anualidad de no más de 50% ni menos del 12% de su paga por retiro. Esta anualidad opcional solamente puede ejercitarse a favor de la esposa, mientras ésta viva o no contraiga matrimonio o a favor de los hijos. 10 U.S.C. §§ 1431–1446. Igualmente se conceden beneficios por defunción pagaderos a los beneficiarios designados por el participante. 10 U.S.C. § 1434.

Este sistema de retiro para las Fuerzas Armadas de los Estados Unidos es similar al Sistema de Retiro de los Empleados del Gobierno de Puerto Rico y sus Instrumentalidades, creado por la Ley Núm. 447 de 1951. 3 L.P.R.A. secs. 761–788, [3] salvo que aquél no requiere aportación alguna de los participantes mientras que éste requiere aportaciones tanto del participante como del Estado Libre Asociado. Como veremos, este requisito no tiene relevancia con la cuestión aquí en controversia.

■■■ El propósito de éstas anualidades por años de servicio es proteger a los participantes que han prestado servicios públicos por varios años, proveyéndoles de una cantidad, más o menos adecuada para su subsistencia. [4] Es un derecho personal que se extingue al fallecer el participante. [5] En la

---

[3] La Ley Núm. 447 de 1951 provee para el pago de una anualidad por retiro a los empleados del Estado Libre Asociado, 3 L.P.R.A. sec. 766, derecho de opción a una anualidad reducida para proteger a la familia del participante, *id*. Sec. 768, y, derecho a defunción *id*. Sec. 773.

[4] También estos sistemas de retiro permiten al Estado renovar su personal cuando la eficiencia de éste empiece a deteriorarse, bien por razones de edad o de incapacidad, facilitando la incorporación al servicio público de un personal joven y vigoroso.

[5] El Art. 24 de la Ley de Retiro prescribe que el derecho a las anualidades por retiro es uno personal del recipiente, declarando nulo todo traspaso o transferencia del mismo. También lo exceptúa de embargo y de todo procedimiento judicial. 3 L.P.R.A. sec. 785.

mayoría de los casos la pensión consiste de modestas sumas de dinero que apenas alcanzan para cubrir las necesidades del participante. En efecto, la pensión promedio mensual en el Sistema de Retiro de los Empleados del Gobierno de Puerto Rico es de menos de $200. De hecho, el 88% de los jubilados en este momento reciben una pensión de menos de $200 mensuales. [6] El promedio varía en los diferentes sistemas. Así, el promedio de la anualidad por retiro en la Universidad de Puerto Rico es de $201.82, [7] en el Sistema de Retiro de los Maestros es de $112.75 y en el de la Autoridad de las Fuentes Fluviales es de $190.70. [8] Basta tener presente que en Puerto Rico se considera dentro de los límites de pobreza un ingreso familiar de menos de $2,000 al año, para comprender las consecuencias económicas de dividirse entre los cónyuges estas pensiones. Véase la antología *"Problemas de Desigualdad Social en Puerto Rico"* del Centro de Investigaciones Sociales de la Universidad de Puerto Rico, en la que aparece el estudio *"¿Quiénes son los Pobres en Puerto Rico?"*, efectuado por los Profesores Celia F. de Cintrón y Harry B. Levine. [9] (Estarcido.)

Generalmente los estatutos que crean estas pensiones establecen como requisitos un mínimo de años de servicio, veinte en el caso de autos, un mínimo de edad para el retiro y una aportación del participante. El monto de la pensión varía a tono con los factores de edad y años de servicio y en relación

---

[6] Información suministrada por la Oficina de Personal del Gobierno del Estado Libre Asociado de Puerto Rico.

[7] Información suministrada por la Oficina de Retiro de la Universidad de Puerto Rico.

[8] Información suministrada por la Junta de Retiro Para Maestros y la Oficina de Personal de la Autoridad de las Fuentes Fluviales.

[9] En este estudio se hace referencia a otros estudios efectuados por las agencias gubernamentales en los que se adoptan diferentes cifras para delimitar el ingreso mínimo familiar. Por ejemplo, en el estudio comparativo *"Ingreso y Gastos de la Familia Puertorriqueña"* efectuado por el Departamento del Trabajo del Estado Libre Asociado en el 1963 se adopta la cantidad de $4,056 como el ingreso mínimo familiar para cubrir "necesidades básicas indispensables."

con el salario percibido. Los años de servicio, así como las aportaciones de los participantes, constituyen la causa de la pensión.

Una aplicación literal del Art. 1301 del Código Civil dispondría sin más de la cuestión reconociendo su aparente carácter ganancial.[10] Pero también desvirtuaría la finalidad de la pensión y su naturaleza personalísima. Como hemos visto, se trata de cantidades módicas para la subsistencia de los jubilados durante los años de mayor desvalimiento económico.

La doctrina considera que la naturaleza personalísima de estas anualidades determinan su carácter privativo. Se trata de créditos *intuitu personae*—esto es en consideración a la persona—que, por su propia naturaleza, están excluidos de la masa común. Véase: La Cruz Berdejo, *Derecho de Familia*, págs. 203–204 (Librería Bosch 1966). Puig Brutau, IV, Vol. 1, *Fundamentos de Derecho Civil*, pág. 29, Planiol y Ripert, III, *Tratado Práctico de Derecho Civil Francés*, págs. 225, 226, 229, 232, 453 (1938), Colín y Capitant, VI, *Curso Elemental de Derecho Civil*, pág. 163 (3r. ed.). Tedeschi Guido, *El Régimen Patrimonial de la Familia*, pág. 92 (Ediciones Jurídicas Europa-América 1954), Fortuny Comaposada, *Régimen de Bienes en el Matrimonio*, pág. 243 (Colección Nereo), Gómez, José J., *Régimen de Bienes en el Matrimonio*, págs. 91–92 (Editorial Temis, Bogotá 3r. ed.), Vaz Ferreira, Eduardo, *Tratado de la Sociedad Conyugal*, págs. 392 y 393 (1959, Montevideo, Uruguay).

Afirma Josserand que hay ciertos bienes que se consideran privativos porque repugnan, por su naturaleza misma, a toda puesta en comunidad. La repugnancia, explica, puede atribuirse bien a la incesibilidad del crédito o a su carácter personal. Entre estos créditos menciona específicamente las pensiones por retiro. *Derecho Civil*, Tomo III, Vol. I, pág. 29 (1951).

---

[10] Véase en el escolio número 2 el texto del artículo 1301.

Planiol y Ripert, aunque rechazan la incesibilidad como criterio determinante, sin embargo, coinciden con Josserand en que las pensiones por retiro tienen carácter privativo por constituir créditos *intuitu personae*. *Op. cit.* Nos dicen a la página 232 de la obra citada:

". . . Si las pensiones de retiro . . . quedan excluídas de la comunidad se debe, exclusivamente, a que son créditos *intuitu personae*, que sirven para asegurar la subsistencia de aquellas personas a quienes se pagan: sería inadmisible que, en caso de divorcio o de supervivencia del beneficiario de la renta al disolverse el matrimonio, el titular de la pensión tuviese que dividir los plazos o vencimientos futuros con su ex-cónyuge o los herederos de éste. . . . En otras palabras, si las pensiones por retiros y otras similares tienen el carácter de bienes propios no es debido a su intransmisibilidad, sino a su finalidad, que es estrictamente personal."

Colín y Capitant exponen también idéntico criterio. A la página 163 de la obra citada expresan:

"Las pensiones de retiro o de invalidez están constituídas *intuitu personae* para recompensar los servicios prestados por el interesado, o las heridas o enfermedades contraídas durante el desempeño de estos servicios. Dichas pensiones presentan, pués, carácter individual que se oponen a que vengan a crecer el haber de la comunidad. Por consiguiente, los titulares de estas pensiones, conservan el beneficio propio de las mismas el día en que la comunidad desaparece. ¿No sería absurdo que la mitad de estas pensiones pasara en aquel instante al otro esposo o sus herederos?"

En España La Cruz Berdejo recoge el mismo fundamento para sostener el carácter privativo de la pensión:

"a) En este último sentido, pués, aunque no están relacionadas con la personalidad, y además son concedidas como compensación a una actividad típicamente ganancial, deben sin embargo calificarse como bienes privativos, por un marcado carácter *intuitu personae*, las pensiones que se reciben por la posesión de determinadas condecoraciones, las de jubilación de militares y funcionarios civiles, las de retiro obrero y vejez, las concedidas a los

antiguos ministros, etc., si fallece el cónyuge del pensionista, éste no tendrá que compartir el importe de la pensión con sus herederos." *Op. cit.* 204.

■ En fin, no empece el modo de adquisición, el derecho a la anualidad por retiro es uno personalísimo que nunca acrece el haber común. Conviene, sin embargo, notar una distinción entre el derecho en sí y las cantidades abonadas mensualmente en virtud de ese derecho. Éstas tienen más bien el carácter de frutos civiles, lo que determinan su clasificación como un bien ganancial mientras se perciban durante el matrimonio. Art. 1303 del Código Civil, 31 L.P.R.A. sec. 3643. Véase, además, Manresa, IX, *Comentarios al Código Civil Español*, págs. 200–203. A *contrario sensu*, una vez disuelto el vínculo matrimonial, dichas cantidades sólo acrecen el patrimonio del titular del derecho de pensión.

Arguye la interventora que de no resolverse en favor del carácter ganancial de la pensión se obraría en detrimento de los derechos de la mujer. No estamos de acuerdo.

La norma que aquí expresamos no es de aplicación tan sólo a este caso sino que regirá todas las determinaciones en casos futuros donde quien recibe la pensión puede ser tanto un hombre como una mujer. El argumento de la interventora se desvanece si se tiene en cuenta que en los sistemas de retiro gubernamentales en Puerto Rico la proporción de mujeres es igual que la de los hombres. Actualmente cotizan para el Sistema de Retiro de los Empleados del Gobierno de Puerto Rico aproximadamente 72,000 participantes, de los cuales 37,500 son mujeres.[11] Ello, sin contar en el Sistema de Retiro de los Maestros, de un total de 27,141 participantes, 19,891 son mujeres,[12] esto es, casi tres mujeres por cada varón participante. Si algún sector puede sentirse amparado por nuestra interpretación es precisamente el de las miles de

[11] Informe suministrado por la Oficina de Personal del Estado Libre Asociado de Puerto Rico.

[12] Informe suministrado por la Junta de Retiro Para Maestros.

mujeres puertorriqueñas que laboran arduamente cotizando para una pensión que, en la gran mayoría de los casos, será la única fuente de ingresos en la vejez; no sería sustento una modesta suma que se divide. Nuestra interpretación reconoce la igualdad social y económica de la mujer en el régimen económico de la sociedad de gananciales.

Queda incólume en el caso de autos el derecho a alimentos de la interventora provisto por el Art. 109 del Código Civil, 31 L.P.R.A. sec. 385.([13]) En la determinación de este derecho, claro está, se puede tomar en consideración el monto de la pensión del recurrente.

El enfoque de las jurisdicciones de los Estados Unidos en que impera la comunidad de bienes en el matrimonio es distinto al nuestro. Allá, generalmente, depende de cómo o cuándo se adquiere el derecho a la pensión. Véanse: *Problems in Classification of Particular Property Under Community Property Regimes,* 25 La. L. Rev. 139; De Funiak I *Principles of Community Property* 195 y sig.; *French* v. *French* 112 P.2d 235 (Cal. 1941); *Willianson* v. *Willianson* 21 Cal. Rptr. 164; *Packer* v. *Board of Retirement* 217 P.2d 666 (Cal. 1960); *Le Clert* v. *Le Clert* 453 P.2d 755 (N.M. 1969); *Kirkham* v. *Kirkham,* 335 S.W.2d 393 (Texas 1960). Por otro lado, los estatutos en esas jurisdicciones no son uniformes ni tampoco lo son las normas jurisprudenciales. Puig Brutau, IV, *Fundamentos de Derecho Civil* 593; *Morris* v. *Morris* 429 P.2d 129 (Wash. 1967); *Kirkham* v. *Kirkham,* ante; *Dillard* v. *Dillard* 341 S.W.2d 668 (Texas 1961); *Berg* v. *Berg* 115 S.W.2d 1171 (Texas 1938). Una de las dificultades más frecuentes en estas jurisdicciones se produce cuando al momento de la disolución

---

([13]) El Art. 109 del Código Civil provee:

"Si la mujer que ha obtenido el divorcio no cuenta con suficientes medios para vivir, el Tribunal Superior podrá asignarle alimentos discrecionales de los ingresos, rentas, sueldos o bienes que sean de la propiedad del marido, sin que pueda exceder la pensión alimenticia de la cuarta parte de los ingresos, rentas o sueldos percibidos."

de la sociedad de gananciales no se ha adquirido el derecho de pensión. La tendencia de algunos tribunales en estos casos es considerar la pensión como un derecho en expectativa no susceptible de división. *French* v. *French*, ante; *Willianson* v. *Willianson*, ante. Cuando el participante ha cumplido los requisitos mínimos para la pensión—edad y años de servicios— entonces, se considera un derecho adquirido sujeto a división. *Kirkham* v. *Kirkham*, ante; *Mora* v. *Mora*, 429 S.W.2d 660 (Texas 1968).

La situación de las leyes que reglamentan los bienes en el matrimonio en dichas jurisdicciones ha sido descrita como caótica. Friedman, *Matrimonial Property Law*, 133 (1955 The Carswell Company Ltd., Toronto, Canada).

Todo lo anterior es suficiente para disponer de los casos citados en el alegato de la interventora.

*Se dictará sentencia revocando la aquí recurrida y devolviendo el caso para ulteriores procedimientos consistentes con lo aquí expuesto.*

El Juez Presidente, Señor Negrón Fernández, no intervino.