MARGARITA CARRERO QUILES, demandante y recurrente, *v.* MANUEL SANTIAGO FELICIANO, demandado y recurrido,

*Número:* RE-92-349          *Resuelto:* 25 de junio de 1993

*José Ramón Méndez Purcell,* de *Servicios Legales de Puerto Rico,* abogado de la recurrente; *Rolando Emmanuelli Sepúlveda* y *Rolando Emmanuelli Jiménez,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI emitió la opinión del Tribunal.

Nos toca resolver por primera vez si los fondos de un empleado en un plan patronal de compensación diferida tienen carácter de bien ganancial o si, por el contrario, se trata de bienes de carácter privativo.

I

El 23 de abril de 1991 mediante sentencia dictada por el Tribunal Superior, Sala de Ponce, se decretó la disolución del matrimonio[1] existente entre Margarita Carrero Quiles y Manuel Santiago Feliciano por la causal de trato cruel. Se le otorgó a la señora Carrero la patria potestad y la custodia de los tres hijos de 17, 14 y 13 años de edad habidos en el matrimonio y se dispuso que Santiago Feliciano pagaría una pensión alimentaria de $200.00 quincenales para el sustento de los menores.

Meses más tarde, al Santiago Feliciano no haber cumplido con el pago de la pensión alimentaria, el foro de ins-

---

[1] El matrimonio se contrajo el 15 de julio de 1972, según se desprende de la sentencia de divorcio.

tancia ordenó que de los fondos relativos a este caso, que el Banco Popular había consignado en el tribunal, se retirase la cantidad que Santiago Feliciano adeudaba por alimentos y que el remanente pasara a formar parte de la división pendiente de bienes gananciales. Los fondos en cuestión eran unos que Santiago Feliciano poseía al momento de renunciar como empleado del Banco Popular el 29 de marzo de 1991, y consistían de dos partidas distintas, a saber: (1) las aportaciones de Santiago Feliciano a un *plan de pensión* del Banco Popular, con sus intereses; (2) la cantidad acumulada en un plan de beneficios que tenía el Banco Popular para sus empleados conocido como *"Plan De Compensación Diferida"*.

El 30 de enero de 1992 Santiago Feliciano presentó una moción de sentencia sumaria en la que solicitó que el tribunal declarase que los fondos en el plan de compensación diferida, que sumaban $38,989.82, eran de carácter privativo. Con el beneficio de la comparecencia en oposición de la señora Carrero Quiles, el 26 de mayo de 1992 el Tribunal Superior declaró con lugar la moción de sentencia sumaria. Entendió el foro a quo que, conforme a la jurisprudencia de Puerto Rico, "[e]l pago global del beneficio de un plan de retiro es privativo por constituir la liquidación total del derecho a la pensión". Anejo I, pág. 2. Sobre esa base, determinó que los fondos en cuestión pertenecían al haber privativo del demandado Santiago Feliciano.

De dicha sentencia acudió a nos la demandante Carrero Quiles negando, en esencia, el carácter privativo de los fondos aludidos. El 9 de octubre de 1992 expedimos el recurso de revisión solicitado. Pasamos a resolver.

## II

En síntesis, la recurrente sostiene que las aportaciones del Banco Popular al plan de compensación diferida de Santiago Feliciano eran en realidad parte del salario de

éste, por lo cual los fondos acumulados tienen carácter ganancial.

Para poder evaluar la controversia ante nos, es menester precisar los rasgos principales del plan de beneficios en cuestión. Conforme al folleto del Banco Popular que describe el referido plan, titulado "Plan De Compensación Diferida", el cual forma parte de los autos de este caso y que el foro sentenciador tuvo ante sí, el plan aludido tiene las características siguientes:

1. El plan es un "incentivo de trabajo" que ofrece el Banco a todos sus empleados regulares activos, luego de completar un año de servicios.

2. El plan consiste de aportaciones anuales que hace el Banco a través de un fideicomiso a una cuenta a nombre del empleado y esas aportaciones se determinan a base del salario del empleado, fluctuando entre un 0% y un 25% de este salario.

3. La cantidad que aporta el Banco depende del rendimiento neto de los activos y del capital del Banco, por lo que el plan se considera como uno de participación en ganancias (*Profit–Sharing Plan*).

4. Si el empleado termina su empleo con el Banco antes de jubilarse y ha estado durante siete años o más en el plan, tiene derecho a recibir el valor total que haya acumulado su cuenta al momento de terminar el empleo. Si ha estado menos de siete años, tiene derecho a una parte de ese valor, dependiendo de los años de servicio (80% del valor si tiene 6 años de servicio; 60% si tiene 5 años; 40% si tiene 4 años, etc.).

5. El empleado tiene derecho a retirar hasta 50% de la cantidad, que tenga acumulada en su cuenta, en cualquier momento cuando sufra dificultades económicas serias tales como enfermedad, incapacidad, gastos médicos elevados, pérdida súbita de ingresos u otras que creen necesidades financieras urgentes.

6. Al momento de jubilarse, el empleado tiene derecho a retirar todos los fondos acumulados en un solo pago o puede recibir el total acumulado en plazos regulares durante un período de tiempo que no exceda de diez años.

7. Todo retiro de fondos es tributable para efectos de la Contribución sobre Ingresos durante el año en que el empleado reciba la cantidad retirada.

Es evidente, de acuerdo con la descripción anterior de los rasgos principales del plan, que éste es esencialmente una compensación adicional especial que el Banco paga a sus empleados por servicios prestados, a modo de beneficio marginal. Su rasgo más particular es que dicha compensación es *diferida*; es decir, sólo se cobra de ordinario al momento de la terminación del empleo, ya sea ésta voluntaria, por incapacidad o por jubilación; o excepcionalmente, en caso de seria dificultad económica. Evidentemente se trata de un plan de un patrono de participación en ganancias para beneficio de sus empleados, organizado fiscalmente como un fideicomiso de empleados, conforme a lo dispuesto por el Art. 165 de la Ley de Contribuciones sobre Ingresos de 1954 (13 L.P.R.A. sec. 3165).

¿Tiene, esta compensación especial para el empleado, carácter privativo o es un bien ganancial como cualquier otro emolumento salarial, conforme a lo dispuesto en el Art. 1301 del Código Civil, 31 L.P.R.A. sec. 3641, según lo hemos interpretado en nuestra jurisprudencia?(²)

## III

Citando a Borrell y Soler, ya hemos determinado que son bienes gananciales *"todas las formas de retribuir* la actividad productora" de cualquiera de los

---

(²) Hemos resuelto expresamente que el salario de cualquiera de los cónyuges es ganancial. *Valiente & Cía. v. Corte*, 68 D.P.R. 529 (1948); *Fernández v. Condado Beach Hotel*, 72 D.P.R. 941 (1951); *Rosa Resto v. Rodríguez Solís*, 111 D.P.R. 89, 93 (1981).

cónyuges. *García v. Montero Saldaña*, 107 D.P.R. 319, 330 (1978). Sin embargo, antes, en *Maldonado v. Tribunal Superior*, 100 D.P.R. 370 (1972), habíamos anticipado una excepción a ese principio general del Derecho Civil. En *Maldonado v. Tribunal Superior*, supra, examinamos por primera vez el carácter de una pensión gubernamental por retiro, y aunque reconocimos que con arreglo al tenor literal del Art. 1301 del Código Civil, *supra*, dicha pensión tenía un aparente carácter ganancial, *Maldonado v. Tribunal Superior*, supra, pág. 375, terminamos concluyendo que la pensión aludida debía considerarse privativa *para no desvirtuar la finalidad de la pensión y su naturaleza personalísima*. Este criterio lo reiteramos posteriormente en *Rosa Resto v. Rodríguez Solís*, 111 D.P.R. 89 (1981), en *Delucca Román v. Colón Nieves*, 119 D.P.R. 720 (1987), y en *Benítez Guzmán v. García Merced*, 126 D.P.R. 302 (1990). En todos estos casos destacamos el carácter especialísimo de la pensión por retiro señalando que ésta "constituye un seguro de dignidad" para que la persona que dedicó al trabajo productivo sus años fecundos, no tenga que "encontrarse en la etapa final de su vida en el desamparo o convertido en carga de parientes o del Estado". *Rosa Resto v. Rodríguez Solís*, supra, pág. 92. Hicimos hincapié en que la pensión por retiro consistía de "cantidades módicas para la subsistencia de los jubilados durante los años de mayor desvalimiento económico". De esta finalidad de la pensión por retiro derivamos su naturaleza personalísima. Además, en *Maldonado v. Tribunal Superior*, supra, nos hicimos eco de las expresiones de comentaristas como Planiol y Ripert, Colín y Capitant, y LaCruz Berdejo quienes habían apuntado ya la incongruencia de que al momento del divorcio el titular de la eventual pensión presuntamente ganancial tuviese que dividir los plazos indeterminados y contingentes de su futuro retiro con un ex cónyuge que no iba a compartir con él las incertidumbres de la vejez. Por estas razones, y a modo de excepción, resolvimos que la pensión

por retiro es un bien privativo, no obstante haberse adquirido a costa del caudal común de los esposos mediante las aportaciones salariales de uno de ellos.

■ Como dato que también resalta el carácter excepcional de nuestra determinación sobre la pensión por retiro, debemos señalar que también hemos resuelto que aunque dicha pensión en sí es un bien privativo, las mensualidades que se reciben de dicha pensión deben considerarse como gananciales si el jubilado las percibe estando casado, *Maldonado v. Tribunal Superior*, supra, pág. 377; y que las aportaciones que un cónyuge pensionista hace a su plan de retiro son también de naturaleza ganancial, por lo que la sociedad de gananciales tiene derecho a un crédito por el importe total de dichas aportaciones al momento de su disolución, *Rosa Resto v. Rodríguez*, supra, pág. 93.

## IV

A la luz de lo ya señalado, surge claramente que son de carácter ganancial los fondos que tenía acumulados el demandado Santiago Feliciano en el plan de compensación diferida que tenemos ante nuestra consideración. Dicho plan de compensación diferida no era propiamente un plan de retiro ni exhibía las características especiales que, en el caso de la pensión por retiro, nos llevaron a hacer una excepción al principio normativo general, conforme al cual toda forma de retribución de la actividad productiva de un cónyuge tiene carácter ganancial.

■ Distinto a lo ocurrido en *Benítez Guzmán v. García*, supra, no tenemos aquí una situación donde un empleado que ya había cumplido 65 años de edad y 30 años de servicio en una empresa era acreedor a la pensión por retiro instituida por dicha empresa. En el caso de marras, el empleado *aportaba a un plan de pensión* del Banco y, *además, participaba también* en otro plan distinto de compensación diferida que el Banco tenía para sus empleados. Los

fondos en el plan de compensación diferida no eran primordialmente un "seguro de dignidad" para la subsistencia del empleado "en la etapa final de su vida", sino que era dinero que podía ser retirado por el empleado antes de su jubilación si éste encaraba dificultades económicas serias o si dejaba su empleo en el Banco. Dichos fondos tampoco eran aportaciones que el empleado había hecho, junto a otras patronales, a un caudal actuarial para la jubilación, como de ordinario sucede en los planes de retiro. Los fondos, más bien, eran una retribución por servicios cuyo pago el patrono *postergaba* porque fiscalmente era conveniente tanto al patrono como al empleado. En efecto, el sentido real del plan de compensación diferida surge de su naturaleza como un *esquema contributivo* que le permitía al patrono establecer un fideicomiso de empleados que no era tributable y que le ofrecía ventajas significativas tanto al patrono como al empleado en relación con sus respectivas contribuciones sobre ingresos. Sobre este particular, véanse: F. Castillo y M.A. Rivera, *Tax Aspects of Keogh and Profit Sharing Plans*, 2 *Puerto Rico Tax Reports* Sec. 250-025 (1988); *Deferred Compensation*, 1 *Puerto Rico Tax Reports* Sec. 11-400 *et seq.* (1989); 2 *Puerto Rico Taxes* Sec. 12,381 *et seq.* (1993). Y en el propio reglamento del Departamento de Hacienda sobre estos planes se hace una clara distinción, al menos para fines contributivos, entre un "plan de pensiones" y un "plan de participación en ganancias". *Fideicomisos de Empleados*, 2 *Puerto Rico Tax Reports* Sec. 301-375 (Sec. 3165-1 (1992)).

Al ponderar las razones para no extender a los fondos del plan de compensación diferida ante nos la particular excepción que hemos establecido en casos de pensión por retiro, hemos tenido en cuenta que esos fondos no se originaron de modo alguno en el caudal propio del demandado. Por el contrario, los fondos en cuestión se acumularon en el plan bancario precisamente durante los años que Santiago Feliciano y la señora Carrero Quiles estuvieron casados,

como productos del trabajo de uno de los cónyuges. Su origen consorcial es, pues, indisputable, como lo es también el inexorable mandato del Código Civil de que al disolverse el matrimonio, el marido y la mujer harán suyos por mitad los beneficios obtenidos por cualquiera de ellos durante el mismo matrimonio. 31 L.P.R.A. sec. 3621. Haríamos grave violencia al patente entramado de nuestro Derecho Civil si resolviésemos que tales fondos son privativos. Haríamos grave violencia además a la fuerte política constitucional que existe en Puerto Rico "de lograr la igualdad entre los esposos y proteger a la mujer, por tantos siglos marginada, *contra una posible manipulación de las normas*". (Énfasis suplido.) *Toppel v. Toppel*, 114 D.P.R. 775, 791 (1983). Ello es así porque, a fin de cuentas, la cuestión real en el fondo de este caso es si a la señora Carrero Quiles le corresponde la mitad de los beneficios resultantes del trabajo de Santiago Feliciano mientras ellos estuvieron casados. Resolver que los fondos en disputa son de carácter privativo, por el solo hecho de ser parte de un plan patronal de compensación diferida, constituiría permitir una manipulación de las normas fiscales y patronales para desposeer a una esposa de lo que de otra forma hubiese sido suyo. No hay razón ni en derecho ni en justicia para hacernos parte de tal manipulación.

Por las razones expuestas, *se dictará sentencia que revoque la dictada por el tribunal de instancia el 26 de mayo de 1992.*

El Juez Asociado Señor Hernández Denton disintió con opinión escrita.

— O —

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton.

Por entender que el pago global de los fondos deposita-

dos a nombre del empleado a tenor con el Plan de Compensación Diferida del Banco Popular pertenece privativamente al empleado que lo recibe, disentimos.

I

En vista de los propósitos que lo animan, de los beneficios que confiere al empleado y de los requisitos que éste tiene que reunir para hacerse acreedor de ellos, es inevitable concluir que el Plan de Compensación Diferida goza de características que lo convierten en un privilegio personalísimo del empleado, y como tal debe recibir el mismo trato· jurídico que confiere nuestro ordenamiento a la pensión de retiro. *Maldonado v. Tribunal Superior*, 100 D.P.R. 370, 377 (1972).([1])

Surge del folleto informativo publicado por el Banco Popular (en adelante el Banco), que el Plan de Compensación Diferida (en adelante el Plan) tiene como objetivo proveer al empleado un incentivo de trabajo en pro de los objetivos del Banco y una seguridad al momento de la jubilación. Plan de Compensación Diferida, Resumen del Plan (Anejo XI).([2]) A esos fines, el Plan confiere a los empleados "unos beneficios extraordinarios a la edad de pensión" y "adquiere su verdadero significado en el momento de la jubilación". Anejo XI, pág. 36.

El Plan se estructura como un fideicomiso de empleados al amparo de la Ley de Contribuciones, de modo que tanto el banco como el empleado reciben beneficios contributivos; así, ni el Banco tendrá que pagar contribuciones sobre los fondos depositados en el fideicomiso, ni el empleado tendrá

---

([1]) En efecto, la propia recurrente, en sus alegatos ante este Foro, implícitamente reconoce que la anterior es la conclusión inevitable que se desprende de nuestra jurisprudencia. Alegato de la recurrente, págs. 7–10. Toda su argumentación se dirige a los efectos de que establezcamos una excepción a la norma. No obstante, la recurrente en este caso tiene otros medios para proteger el derecho de sus hijos a que su padre les provea alimentos, sin que sea necesario trastocar la normativa vigente.

([2]) Refiérase al Apéndice de la Petición de Revisión, Anejo XII, pág. 30 *et seq.*

que tributar por los fondos consignados a su nombre hasta que los retire. El folleto informa que, "[a]l igual que cualquier otro retiro, todo pago de beneficio es tributable para efectos de Contribución Sobre Ingresos en el año en que [reciban el pago]". Anejo XI, pág. 38.

No se exige a los empleados que hagan aportación alguna de su sueldo. Su contribución es "el esfuerzo que [debe] poner día a día para el éxito de los objetivos del Banco". Anejo XI, pág. 33. Para adquirir el derecho a participar en el Plan, el empleado deberá cuando menos completar un año de servicio. Íd. A partir de entonces, el Banco hace aportaciones anuales a través de un fideicomiso, a una cuenta a nombre del empleado. El monto de la aportación se determina según el salario del empleado y depende del rendimiento neto de los activos y el capital del banco. Íd., págs. 33–34. Esto último es lo que le da el carácter de un plan de participación en ganancias, o *Profit Sharing Plan.*

Si el empleado termina sus servicios antes de haber cumplido tres (3) años en el empleo, no habrá adquirido derecho alguno a recibir el pago de los fondos a su nombre. A partir de los tres (3) años de servicio, se hará progresivamente acreedor de un por ciento de esos fondos, comenzando con veinte por ciento (20%) a los tres (3) años y terminando con cien por ciento (100%) a los siete (7) años. Anejo XI, pág. 35. No obstante, en cualquier momento puede retirar hasta un cincuenta por ciento (50%) de éstos en caso de tener una necesidad económica seria. Íd., pág. 5. Al jubilarse, puede optar entre retirar el total de los fondos o recibirlos mediante pagos periódicos por no más de diez (10) años. Íd., pág. 36.

## II

El esquema anterior demuestra que, en lo que atañe al empleado, el Plan reviste numerosas características de un

plan de pensión. Primero, y al igual que la pensión, el Plan está dirigido a proteger económicamente al empleado en el momento de la jubilación. Véase, *e.g.*, *Rosa Resto v. Rodríguez Solís*, 111 D.P.R. 89, 92 (1981). Segundo, el empleado tiene que trabajar un número de años determinado antes de ser acreedor de estos beneficios. Además, el monto de los pagos varía dependiendo del número de años de servicio y del salario del empleado. *Maldonado v. Tribunal Superior*, 100 D.P.R. 370, 373–374 (1972). Lo mismo sucede con la pensión. Tercero, el empleado no tiene que tributar nada hasta que retire los fondos. Tampoco tiene que tributar nada sobre sus derechos acumulados en el plan de pensión hasta tanto se le pague ésta. Cuarto, al igual que el plan de pensión visto en *Benítez Guzmán v. García Merced*, 126 D.P.R. 302 (1990), el empleado nada aporta al Plan.[3]

Hay también razones de índole práctica que aconsejan que reconozcamos el carácter privativo del pago global de los fondos del Plan. Por ejemplo, un ex cónyuge no debe poder exigirle al otro que retire los fondos del plan de compensación diferida antes de su jubilación, para así computarlos como parte de la masa común en un pleito para liquidar la sociedad de gananciales.[4] Por eso, la división de la masa común nunca estaría completa hasta el momento en que el empleado se retirara, lo cual podría suceder años después del divorcio. Además, luego de haber recibido los fondos, habría que prorratear su pertenencia según los años de matrimonio con el ex cónyuge, y el valor del plan de compensación diferida devengado durante éste.

Las complicaciones inherentes a la norma sentada por este Tribunal hoy son evidentes. Más práctica, sabia y jurídicamente sólida es la norma que reconoce el carácter

_____

[3] Entendemos que tampoco pueden imputarse a la sociedad de gananciales las ganancias del Banco que, después de todo, son las que determinan el monto de los fondos depositados a nombre del empleado bajo el plan de compensación diferida.

[4] Nuestra jurisprudencia parecería impedir ese resultado. Véase *Rosa Resto v. Rodríguez Solís*, 111 D.P.R. 89, 95 (1981).

ganancial de los pagos periódicos percibidos durante el ma-
trimonio, pero que preserva el carácter privativo del dere-
cho a la anualidad conferido por el Plan, y de su liquida-
ción mediante pago total.

Por las razones que anteceden, disentimos.