# 2001 DTA 108

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL V - PONCE Y AIBONITO

SANTOS LUGO, ALVARO
Recurrido

v.

COLON BORRERO, CARMEN L.
Recurrente

Núm. KLCE-00-01164

San Juan, Puerto Rico, a 25 de enero de 2001

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Ortiz Carrión y la Juez Pabón Charneco

Pabón Charneco, Jueza Ponente

## TEXTO COMPLETO DE LA RESOLUCION

La recurrente, Carmen Colón Borrero, en adelante, señora Colón, solicita la revisión de una Sentencia Parcial Declaratoria emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce. Mediante dicho dictamen, el foro de instancia determinó que el dinero depositado en el Puerto Rico Harbor Pilot Plan and Welfare y la pensión a recibir el recurrido de dichos fondos, Alvaro Santos Lugo, en adelante, señor Santos, era de naturaleza privativa no sujeta a división, ni participación por la señora Colón. Por las razones que expresamos a continuación, se expide el auto y se deja sin efecto la Sentencia Parcial Declaratoria.

### I

Según surge del recurso, el señor Santos y la señora Colón contrajeron matrimonio en 1955, divorciándose en el 1999. Mientras estuvieron casados, la señora Colón se desempeñó en el hogar como ama de casa, mientras que el señor Santos trabajó como práctico de puertos (piloto). Se alega que durante dicho período se fueron acumulando unos dineros en un plan de pensiones, producto de los servicios prestados por el señor Santos. Dichos dineros fueron depositados en un fideicomiso, a modo de beneficio marginal para el señor Santos, ascendiendo a la suma de $667,000 aproximadamente, pudiendo ser cobrados únicamente a la terminación de su empleo. También se alega, por la señora Colón, que estos fondos se generaban de dos (2) tipos de aportaciones: una aportación se generaba mediante el cobro de un cargo adicional a cada barco que entraba y salía de Puerto Rico y la otra de las aportaciones obligatorias de cada piloto. Durante el proceso del divorcio, el Tribunal de Primera Instancia emitió una Orden de 3 de febrero de 1999 dirigida a impedir la disposición y/o transacción de los bienes de la sociedad legal de gananciales, incluyendo los cúmulos habidos en el plan de pensiones aquí en controversia, conocido como Puerto Rico Harbor Pilot Plan and Welfare, en adelante PRHPPW, sin autorización expresa del tribunal.

Posteriormente, el señor Santos solicitó se dejara sin efecto dicha Orden alegando que dichos fondos eran de naturaleza privativa. El foro de instancia concedió a la señora Colón término para contestar y ella así lo hizo. El tribunal de instancia celebró una vista a esos efectos a la que compareció a testificar el señor Pedro Rivera Vélez, oficial de la PRHPPW.

Posteriormente, el 21 de junio de 1999, dicho tribunal emitió una Resolución mediante la cual denegó la

Moción Solicitando se Deje sin Efecto Orden. Concluyó el foro de instancia que la declaración del oficial de la PRHPPW estableció que la aportación hecha por los dueños de barcos al Plan de Pensión se hacía en consideración a la labor que realizaba el piloto o práctico de puerto, quién no recibía directamente remuneración por dicho servicio, ya que era remitido al Plan de Pensión.

Posteriormente, el 8 de marzo de 2000, se celebró una vista, para dilucidar una solicitud de pensión alimentaria para la señora Colón al amparo del Art.109 del Código Civil de Puerto Rico. ██ En dicha vista se le informó al tribunal que las partes habían llegado a algunos acuerdos, entre los cuales cabe destacar la estipulación de la pensión alimentaria, entre otros. A tales efectos, el 13 de marzo de 2000, el foro de instancia emitió una Orden en la que dejó sin efecto cualquier orden emitida con anterioridad referente a los dineros de la PRHPPW.

El 8 de mayo de 2000, atendiendo una Moción con Carácter de Urgencia, presentada por la señora Colón, en la que solicitaba nuevamente la orden paralizando los fondos en manos de PRHPPW por razón de haber sido alegadamente engañada por el señor Santos para llegar a los acuerdos anteriores, el tribunal *a quo* restableció su directriz al recurrido y a la PRHPPW de que se abstuvieran de realizar cualquier tipo de transacción sin autorización expresa de dicho foro.

Así las cosas, el tribunal de instancia celebró otra vista, el 14 de junio de 2000, para dilucidar las controversias generadas en cuanto a los planteamientos de engaños y sobre la validez de los acuerdos ya estipulados por las partes en la vista del 13 de marzo de 2000. En esta vista, el foro de instancia resolvió dejar sin efecto todos los acuerdos anteriores, mantuvo la orden del 8 de mayo de 2000 y señaló una vista sobre pensión ex-cónyuge para el 5 de septiembre de 2000. Sin embargo, por entender que la materia sobre la naturaleza ganancial del dinero en la PRHPPW le era de competencia a otra sala, no lo consideró.

Por su parte, el 13 de junio de 2000, el señor Santos presentó demanda contra la señora Colón solicitando la división de bienes. Dicha demanda fue debidamente contestada, reconviniendo la señora Colón y alegando que se habían dejado de incluir bienes sujetos a división entre los cuales se encontraban los fondos antes mencionados.

El 9 de agosto de 2000, el señor Santos presentó una moción urgente solicitando se decretara que la pensión a recibir por el señor Santos era de naturaleza privativa y que dejara sin efecto la Orden del 8 de mayo de 2000.

En respuesta a la anterior moción, el 6 de septiembre de 2000 y notificada el 15 de septiembre de 2000, el foro de instancia emitió Sentencia Parcial Declaratoria decretando que la pensión a ser recibida por el señor Santos era de naturaleza privativa, no sujeta a división, ni participación por la señora Colón. Dicho foro basó su determinación en una certificación a los efectos de que los fondos del PRHPPW provienen de los dueños de los barcos que entran y salen de los Puertos de Puerto Rico, conforme Resolución Núm. 83-04 del 1 de marzo de 1993 aprobada por el Director Ejecutivo de la Autoridad de Puertos y el Secretario del Departamento de Transportación y Obras Públicas. ██ En su consecuencia, dictaminó el foro de instancia que cualquier Orden congelando los fondos en posesión de la PRHPPW por motivo de alegarse que la pensión era ganancial, no podría prevalecer, ya que sería contraria a lo establecido.

Inconforme, la señora Colón acudió ante este Tribunal el 13 octubre de 2000, vía Moción en Auxilio de Jurisdicción. En su escrito solicitó se paralizaran los procedimientos en el tribunal de instancia y que no se desembolsaran los fondos aquí en controversia.

Este Tribunal, el 13 de octubre de 2000, notificada el 17 de octubre de 2000, emitió Resolución mediante la cual acogió el auxilio de jurisdicción ordenando paralizar los efectos de dicha Sentencia Parcial Declaratoria hasta tanto se resolviera el recurso en sus méritos. Además, concedimos término para que el señor Santos se expresase; oportunamente así lo hizo. Estando en condiciones de resolver el recurso, procedemos según intimado.

## II

En su escrito, la señora Colón plantea que erró el foro de instancia al determinar que en el contexto de los

hechos de un caso de división de bienes, donde la controversia medular es si un bien es privativo o ganancial, determinar que el mismo es privativo sin la celebración de una vista, resolviendo a base de unos hechos, con prueba que no forma parte del expediente y que no ha sido admitida conforme al derecho evidenciario. En segundo término, nos plantea que erró el tribunal de instancia al determinar que los fondos pagados por un patrono a su empleado por servicios prestados, y a modo de beneficio marginal, cobrado por el empleado a la terminación del empleo, constituye un bien de naturaleza privativa, no sujeto a división, ni participación.

### III

En Puerto Rico, el matrimonio da origen a la sociedad legal de gananciales, salvo pacto en contrario ■ y concluye su existencia cuando se disuelve el matrimonio por la muerte de uno de los cónyuges, por divorcio o cuando se declara nulo el matrimonio. ■

La sociedad legal de gananciales adquiere no solamente los bienes y beneficios obtenidos por los cónyuges, sino que también absorbe las cargas contraídas por éstos, independientemente de cual de los cónyuges las contraiga durante el matrimonio. Estos beneficios y cargas se dividirán por mitad entre ambos cónyuges cuando se disuelva el matrimonio ■

La sociedad legal de gananciales está compuesta de ambos, esposo y esposa, pero tiene personalidad jurídica separada de los miembros que la componen. Partiendo del supuesto de que el matrimonio es para el beneficio de ambos cónyuges y no para el beneficio individual de sus miembros, se crea la presunción de gananciabilidad. Dicha presunción establece que todos los bienes obtenidos durante el matrimonio tienen carácter ganancial y el que invoque lo contrario, tiene que probar que son privativos. ■

Disuelto el vínculo matrimonial, procede la liquidación de la sociedad legal de gananciales. Este proceso comprende la ejecución de las operaciones necesarias para determinar la existencia de bienes gananciales, los cuales se dividirán por partes iguales entre ambos cónyuges, o sus sucesiones, en interés. A esta cantidad o valor final a ser dividido por la mitad, se llega previas deducciones y reintegros a cada uno de aquellos bienes que le corresponden a título privativo, así como de las responsabilidades imputables al acervo común. Dicha liquidación puede resumirse en tres (3) operaciones, a saber: (1) formación de inventario con avalúo y tasación; (2) determinación del haber social o balance líquido a partir; y (3) división y adjudicación de los gananciales. *Rosa Resto v. Rodríguez Solís*, 111 D.P.R. 89, 91 (1981).

El inventario es la base de todo el proceso y se le define como *"relación detallada del activo (bienes y derechos) y pasivo (obligaciones y cargas) de la comunidad en el momento de su disolución, acompañada de su tasación." Id.*, a la pág. 91; *Janer Vilá v. Tribunal Superior*, 90 D.P.R. 281 (1964). Dicho inventario debe incluir las cantidades que, luego de haber sido pagadas por la sociedad, debe rebajarse del capital de los ex-cónyuges. ■ A esta cantidad o valor final a ser dividido por mitad, se llega previas deducciones de aquellos bienes que le corresponden a cada parte a título privativo. El inventario, base de este proceso, consiste en la relación detallada de los activos y pasivos de la comunidad en el momento de su disolución, acompañada de su tasación. *Rosa Resto v. Rodríguez Solís, supra.*

En el caso antes citado, se ha interpretado que forman parte del activo a ser inventariado, no sólo los bienes y derechos en poder de la comunidad conyugal al momento de la disolución, sino que, también, han de ser incluidas en inventario y traídas a colación todas las cantidades que habiendo sido pagadas por la sociedad de gananciales, deban rebajarse del capital de los cónyuges.

Por otro lado, el ordenamiento jurídico distingue entre los bienes que pertenecen a cada uno de los cónyuges, que serán los privativos y aquéllos que por pertenecer a la sociedad se reputan gananciales. En el Código Civil, [8] se define como bienes gananciales los adquiridos por título oneroso durante el matrimonio a costa del caudal común, bien se haga la adquisición para la comunidad, bien para uno sólo de los esposos; los obtenidos por la industria, sueldo, trabajo de los cónyuges o de cualquiera de ellos; y los frutos, rentas o intereses devengados

durante el matrimonio, procedentes de los bienes comunes o de los peculiares de cada uno de los cónyuges.

Sin embargo, la regla referente a los bienes obtenidos por la industria, sueldo, trabajo de los cónyuges, tiene una importantísima excepción: el capital de las pensiones de retiro por años de servicio pertenece privativamente al empleado y no a la sociedad legal de gananciales. *Rosa Resto v. Rodríguez Solís, supra.*

El Tribunal Supremo expresó en *Carrero Quiles v. Santiago Feliciano*, 133 D.P.R. 727 (1993), que aunque como regla general son bienes gananciales todas las formas de retribución de la actividad productora de los cónyuges, se considera privativo el ingreso de una pensión de retiro, en virtud de su naturaleza personalísima.

En cuanto al derecho de recibir la pensión, nuestro Tribunal Supremo ha expresado en *Román Mayol v. Tribunal Superior*, 101 D.P.R. 807 (1973), que el derecho a pensión de retiro por los años de servicio del empleado, en ese caso público, tiene un respetable contenido ético y moral y constituye un seguro de dignidad para el hombre o la mujer que habiéndose dedicado al servicio durante sus años fecundos, no debe encontrarse en la etapa final de su vida en el desamparo o convertido en una carga para los parientes o el Estado.

La pensión será ganancial o privativa dependiendo de varias circunstancias, a saber: si la pensión fue pagada completamente por la empresa y no se descontó del sueldo del empleado, es privativa. Por otro lado, si la pensión se pagó con parte del sueldo, trabajo o industria del cónyuge y se cobra durante el matrimonio, es ganancial. *Carrero Quiles v. Santiago Feliciano, supra.* Si se cobra luego de disuelto el matrimonio, es privativo, pero la otra parte tendrá crédito por la cantidad que la sociedad haya aportado a la pensión. ■

En *Maldonado v. Tribunal Superior*, 100 D.P.R. 370, 373,(1972), el Tribunal Supremo manifestó:

*"El propósito de estas anualidades por años de servicio es proteger a los participantes que han prestado servicios públicos por varios años, proveyéndoles de una cantidad, más o menos adecuada, para su subsistencia."*

De igual manera, indicó que una pensión o anualidad de este carácter constituye un derecho personal de un empleado que por su propia naturaleza está excluida de la masa común y no acrece el haber común. *Id.* En el caso antes mencionado, se trataba de una pensión o anualidad por años de servicio de las Fuerzas Armadas. Este sistema de retiro no requería aportación alguna de los participantes, por lo que se consideran de carácter privativo. Por lo tanto, una vez disuelto el vínculo matrimonial, dichas cantidades sólo acrecen el patrimonio del titular del derecho a la pensión. *Id.*

Así pues, en *Benítez v. García Merced*, 126 D.P.R. 302 (1990), el Tribunal Supremo estableció que el derecho a pensión por retiro es uno personalísimo que nunca acrece el haber común. Se trata de dinero recibido en consideración a la persona, fuera del alcance del Artículo 1301 (2) del Código Civil antes mencionado. La controversia en ese caso giraba en torno a si la pensión del empleado, el Sr. Benítez, era de carácter privativo o ganancial. Se trataba dicho caso de una pensión de retiro que la Empresa Goya hizo acreedor de la misma al Sr. Benítez, por haber trabajado durante 30 años en esa compañía. La empresa asumió la totalidad del costo del plan de retiro, sin que los empleados tuvieran que hacer aportación alguna.

El Tribunal Supremo añadió que el pago global de una pensión de retiro constituye la liquidación del derecho o el capital de una renta vitalicia, entonces es forzoso concluir que le pertenece privativamente al titular del derecho a la pensión. Si la empresa o patrono aportó totalmente las contribuciones al plan de retiro, sin aportación alguna por parte del pensionista casado, la sociedad legal de gananciales ni siquiera tiene un crédito por las aportaciones, distinto al caso donde la sociedad hace las aportaciones. En virtud del carácter privativo del derecho a pensión por retiro, éste no está sujeto a división al momento de la disolución de la sociedad de gananciales. *Id.*

## IV

Al examinar los hechos del caso de autos a la luz del derecho esbozado, concluimos que incidió el tribunal de

instancia al no celebrar vista para dilucidar la naturaleza ganancial o no de los fondos aquí en controversia. En un principio, el foro de instancia señaló una vista para dilucidar la pensión ex-cónyuge. De igual forma, señaló una segunda vista para dilucidar las controversias generadas sobre dicha pensión que fue estipulada, pero al surgir problemas en cuanto al dinero en posesión de la PRHPPW, además de la controversia sobre la naturaleza de dicho dinero, pospuso la resolución de dicha controversia. Durante ese proceso, el foro de instancia mantuvo congelados los fondos de la PRHPPW. Se desprende de la Resolución de 14 de junio de 2000 que el foro de instancia, por entender que la materia sobre la naturaleza ganancial del dinero en la PRHPPW le era de competencia a otra sala, no lo consideró. Concurrentemente, el 13 de junio de 2000, el senor Santos presentó demanda contra la señora Colón solicitando la división de bienes.

A partir del 13 de junio de 2000, comienza la ejecución de las operaciones necesarias para determinar la existencia de bienes gananciales, conforme hemos reseñado anteriormente para la liquidación de la comunidad de bienes. Esto es el inventario, un avalúo, la liquidación, la división y la correspondiente adjudicación de los bienes que componen la comunidad. Deben incluirse en dicho inventario todos los activos y pasivos de la comunidad. Es en este proceso que se han de ser incluidas en inventario y traídas a colación todas las cantidades, si alguna, que habiendo sido pagadas por la sociedad de gananciales, deban rebajarse del capital de los cónyuges. Inclusive, en los activos de la comunidad, se deberán incluir el conjunto de bienes comunes, e incluso de los privativos de cada cónyuge, al efecto de conocer las posibles transformaciones que ellos sufrieron y que repercuten en los gananciales y su determinación. ■ Más aún, en un caso como en el de autos donde la controversia gira en torno a si la sociedad legal de gananciales aportó a un plan de pensiones, era medular en dicha división la inclusión de dichos dineros en los activos. El foro de instancia se limitó a dilucidar, únicamente, a quién le pertenecían los dineros de la PRHPPW.

Con respecto al segundo error planteado, este Tribunal entiende que la naturaleza privativa o ganancial de los fondos de la PRHPPW no puede ser determinada con los documentos que obran en nuestro expediente. Sería prematuro en esta etapa de los procedimientos entrar a resolver esta controversia en sus méritos, ya que el tribunal no celebró una vista a estos efectos, quedando un gran vacío de prueba esencial sobre el origen de las aportaciones al plan.

Este Tribunal no está en posición, en este momento, de tomar una determinación responsable sobre este particular, pues carecemos de evidencia documental y testifical que nos revele, sin lugar a dudas, la naturaleza de la dual aportación que se acumularon en el plan de retiro aquí en controversia. Basta indicar, que se presentaron ante el foro de instancia versiones encontradas sobre el origen de los fondos, según se desprende del expediente. En la vista celebrada en que declaró el señor Pedro Rivera Vélez, oficial de la PRHPPW, éste declaró que la aportación de los dueños de barcos que se hacen al Plan de Pensión, se hacen en consideración a la labor que realiza el piloto o práctico de puerto, quien no recibe directamente remuneración por dicho servicio, ya que es remitido al Plan de Pensión. A tales efectos, se sometió en evidencia una resolución acreditativa de lo anterior. Sin embargo, sobre este punto, la Resolución 83-04 de 1 de marzo de 1994 señala que los fondos allí depositados no sólo provienen del cobro adicional a cada barco que entra y sale de los puertos de Puerto Rico, sino que todo piloto con licencia otorgada por la Autoridad de los Puertos de Puerto Rico está obligado a aportar al Plan. De hecho, dicha Resolución dispone que se considerará justa causa para revocar una licencia de práctico de puerto el incumplimiento, por acción u omisión, de cualquier disposición de dicha Resolución. Véase, pág. 13 del Apéndice. Por otro lado, el foro de instancia expresa en la Resolución recurrida que se le ha certificado que los fondos del PRHPPW, provienen de los dueños de los barcos.

No nos queda duda que si el dinero del anterior Plan proviniese exclusivamente de las aportaciones de los dueños de barcos, estamos ante un caso claro de un bien de carácter privativo y no ganancial. Sin embargo, dado el hecho de que las aportaciones al plan se pudieran haber complementado con aportaciones hechas por el piloto (señor Santos) al Plan, existe la probabilidad de que éstas provinieran de su salario, por lo que, de ser así, la sociedad legal de gananciales tendría derecho a un crédito por dichas aportaciones.

Recapitulando, se requiere que se le conceda a la señora Colón, la parte afectada por el trámite, oportunidad

72

de vista, en particular a la luz de los eventos procesales del caso de marras con relación a los fondos de la PRHPPW. No existen circunstancias extraordinarias que justificaran el dictamen interlocutorio en forma sumaria sin celebración de vista previa. Resolvemos, en consecuencia, que el primer error fue cometido, por lo que se devuelve el caso al tribunal de instancia para que proceda de conformidad con lo resuelto por este Tribunal.

## V

Por las razones antes expuestas, expedimos el auto, dejamos sin efecto la Sentencia Parcial Declaratoria y devolvemos el caso al Tribunal para que dentro de los próximos veinte (20) días, celebre una vista y dirima la controversia.

Lo acordó y manda el Tribunal y lo certifica la señora Secretaria General.

Aida I. Oquendo Graulau
Secretaria General

### ESCOLIOS 2001 DTA 108

1. 31 L.P.R.A. sec. 385 (Supl.).

2. Cabe indicar que en la Sentencia Parcial Declaratoria, en una nota al calce, la juez de instancia señala que el asunto en controversia fue planteado dentro del caso de divorcio y el Tribunal se abstuvo de expresarse, ya que entendió se debía determinar en la sala que atendía la división de los bienes. Nada indica la juez acerca de las Ordenes emitidas el 3 de febrero y el 21 de junio de 1999.

3. Art. 1296 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3622.

4. Art. 1315, *Id.*, sec. 3681.

5. Art. 1295, *Id.*, sec. 1295.

6. Art. 1307, *Id.*, sec. 3647.

7. Arts. 1316 y 1317, *Id.*, secs. 3691 y 3692.

8. Art. 1301. *Id.*, sec. 3641.

9. López Palau, Ixa. *Aspectos Legales del Divorcio, La separación y la Violencia Doméstica.* First Book Publishing of P.R., 1993, págs. 114-115.

10. Serrano Geyls, Raúl, *Derecho de Familia de Puerto Rico y Legislación de Familia*, Vol. I, San Juan, P.R., 1997.