JUAN PACHECO, por derecho propio y en representación de su hija menor de edad, MERCEDES PACHECO, demandante y apelante, *v.* JUAN POMALES y GUILLERMO GARÁU, demandados y apelados.

Núm. 7596.—*Sometido:* Abril 14, 1939. *Resuelto:* Julio 19, 1939.

342

*Edgar S. Belaval,* abogado del apelante;  *Luis F. Camacho* y *Adolfo Porrata Doria,* abogados, respectivamente, de los apelados.

EL JUEZ ASOCIADO SEÑOR WOLF emitió la opinión del tribunal.

El presente es un recurso de apelación interpuesto contra sentencia de la Corte de Distrito de San Juan que declaró sin lugar una demanda de daños y perjuicios instada por Juan Pacheco, por derecho propio y en representación de su hija menor, Mercedes Pacheco, contra Juan Pomales y Guillermo Garáu.

Se demostró que el 7 de marzo de 1937, a las 11 : 45 a. m., un automóvil perteneciente a Guillermo Garáu y conducido por Julio Pomales, arrolló a Mercedes Pacheco, produciéndole ciertas lesiones.  El accidente ocurrió en momentos en que el vehículo chocó con el encintado y se subió sobre la acera de un camino que hay en los terrenos de la Universidad de Puerto Rico.  Pomales iba acompañado de Guillermo Garáu, hijo.  Ambos tenían 19 años de edad al ocurrir el accidente.  Es innecesario penetrar en todos los hechos que dieron lugar al mismo, porque la decisión final del caso no depende de si el conductor fué o no culpable de negligencia.  Podría asumirse que lo fué.

El litigio se inició contra los padres de dichos jóvenes y en la demanda se alegaba que de conformidad con el inciso primero del artículo 1803 del Código Civil (ed. 1930) los padres eran responsables de la negligencia de los hijos menores de edad.

La contestación de los demandados es que Julio Pomales había vivido separado de su padre por espacio de muchos

años; que no estaba bajo su autoridad y que no dependía en manera alguna de su familia; que su padre no era responsable de los daños y perjuicios causados por él; que Guillermo Garáu, hijo, era simplemente un pasajero del automóvil al momento de ocurrir el accidente, que iba allí sin permiso ni conocimiento de su padre, y que él no tenía dominio sobre el conductor del vehículo ni era en modo alguno responsable del accidente.

Sólo el testigo Andrés Porrata declaró que Pomales vivía con su padre. Su declaración no fué muy satisfactoria. Dijo que Pomales asistía a la escuela en Guayama y que su familia vivía en el campo, a unos 12 kilómetros de distancia; que Pomales iba a la casa de su padre a pasarse los fines de semana. Más tarde al preguntársele si Pomales vivía en la ciudad, contestó "Él va y viene."

Para impugnar su declaración los demandados ofrecieron cinco testigos, entre ellos el alcalde de Guayama, todos los cuales declararon que Pomales había estado ausente de su familia desde que era niño y que no dependía de su padre ni estaba bajo la autoridad de éste. La corte inferior dijo lo siguiente en el curso de su opinión: "Por mucho peso que queramos dar a la declaración de Andrés Porrata, ella no nos convenció en cuanto a que Julio Pomales viva con su padre Juan Pomales, ni vivía a la fecha del accidente."

En lo que al otro joven, es decir Guillermo Garáu, hijo, se refiere, si bien es cierto que se probó que vivía con su padre al tiempo de ocurrir el accidente, sin embargo, él era meramente un pasajero del automóvil. La prueba demuestra que el padre de Garáu prestó el vehículo a Gregorio Vázquez para que viniera de Guayama a San Juan; que en el camino Vázquez recogió a Pomales y a Garáu, hijo, sin permiso o conocimiento del padre de éste; que Garáu, hijo, se desmontó del automóvil en Río Piedras, y que Vázquez y Pomales fueron a San Juan, donde Vázquez lo estacionó y lo dejó a cargo de Pomales. Éste lo tomó para dar un paseo,

aparentemente sin conocimiento de Vázquez, se fué para Río Piedras y allí le pidió a Garáu, hijo, que se montara con él. Al venir de regreso para San Juan ocurrió el accidente. Nada había que demostrara que Garáu, hijo, tuviera en absoluto algo que ver con la conducción y manejo del vehículo en cualquier momento. Según la prueba, Vázquez se consideró responsable de los daños ocasionados al automóvil de Garáu y pagó por las reparaciones. Esta prueba no fué controvertida y tiende a demostrar que Garáu, hijo, no tenía el dominio del automóvil de su padre sino más bien que el que lo tenía era Vázquez.

En su alegato el apelante levanta la cuestión de que el paseo era una "aventura común" (*joint venture*) y que ambos jóvenes son responsables de los daños ocasionados por uno de ellos. No existe prueba en apoyo de esta contención.

La corte inferior dice en su opinión:

"En cuanto a la presencia de Garáu, Jr., en el automóvil que guiaba Pomales, no está claramente establecido por la prueba que no fuera un pasajero, ni que tampoco tuviese dominio o autoridad en el manejo o manipulación del vehículo."

En su alegato el apelante señala ocho errores, pero sólo son importantes los errores 6 y 7 que discuten la cuestión relativa a la responsabilidad de los demandados. Algunos de los otros errores se refieren a un estado de cosas que tendría importancia si la corte inferior hubiera resuelto que el conductor no fué negligente.

El primer señalamiento de error se refiere a un elemento de daños y perjuicios y en su consecuencia no es menester considerarlo.

Tampoco resulta importante la actuación de la corte al ordenar que se presentara un pliego de especificaciones. Esto cubre el segundo señalamiento.

En los señalamientos tercero y cuarto, el apelante da gran énfasis a la actuación de la corte inferior al abrir la rebeldía de los demandados y al negarse a eliminar la con-

testación y la excepción previa a la tercera demanda enmendada. No estamos en absoluto convencidos de que la corte no usara debidamente su discreción al ordenar la apertura de la rebeldía. Este tribunal siempre ha sido muy liberal en permitir enmiendas bajo el artículo 140 del Código de Enjuiciamiento Civil. Igual práctica puede ser sostenida al negarse la corte inferior a eliminar la excepción previa y la contestación a la tercera demanda enmendada. Al demandante se le hizo necesario radicar tres demandas y ello de por sí tendería a demostrar que el proceder de la corte de distrito al permitir que las referidas alegaciones de los demandados permanecieran en los autos no fué un abuso de discreción.

En lo que al sexto señalamiento se refiere, el caso de *Rodríguez* v. *Santos,* 40 D.P.R. 48, parece ser directamente aplicable. Allí se resolvió:

"Cuando un hijo abandona la casa paterna, poniéndose así fuera del alcance de la autoridad del padre y actúa por su cuenta y vive por sí, el padre no es responsable de los daños causados por los actos negligentes o ilícitos del hijo que así viva.

"Cuando la corte inferior apreciando la prueba en cuanto a si el hijo vivía o no en compañía del padre, llega a una conclusión contraria y no se demuestra que actuara por pasión, prejuicio o parcialidad o por manifiesto error, su conclusión debe sostenerse en apelación.

"En acción de daños y perjuicios contra un padre por los daños causados por el hijo, resuelta la cuestión de la responsabilidad del padre en sentido adverso al demandante, si ella es bastante por sí sola para terminar el caso, todas las demás cuestiones carecen de importancia y la omisión de no resolver éstas no puede constituir motivo de error."

Y en lo que respecta al séptimo señalamiento, la corte inferior basó su opinión en el caso de *López* v. *American R. R. Co. of P. R.,* 50 D.P.R. 1, donde este tribunal dijo:

"Es regla general reconocida en esta jurisdicción, que la negligencia del conductor de un vehículo no puede imputarse a un pasajero."

También se señala como error el haber dejado la corte de conceder las costas al demandante. Como la sentencia le fué adversa en la corte inferior y la misma es confirmada por este tribunal, no es menester considerar este señalamiento.

*La sentencia apelada debe ser confirmada.*

El Juez Asociado Sr. Travieso no intervino.