EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ana Teresa López y Otros<br>    Recurrida Demandantes<br>    Reconvenidos<br><br>         v.<br><br>Leonor Porrata Doria y Otros<br>    Peticionaria Demandadas<br>    Reconveniente<br><br>         v.<br><br>Jessica Lugo Porrata Doria, et al.<br>    Demandantes contra Terceros<br><br>         v.<br><br>Ricardo J. Calderón López y Otros<br>    Recurrida Terceros Demandados y<br>    Demandantes contra Terceros<br><br>         v.<br><br>Leonor Porrata Doria y Otros<br>    Peticionaria Terceros Demandados | Certiorari<br><br>2002 TSPR 39<br><br>156 DPR _____ |

Número del Caso: CC-2000-558

Fecha: 4/abril/2002

Tribunal de Circuito de Apelaciones:
                    Circuito Regional I

Juez Ponente:
                    Hon. Yvonne Feliciano Acevedo

Abogado de la Parte Peticionaria:
                    Lcdo. Jorge Luis Guerrero Calderón

Abogado de la Parte Recurida:
                    Lcdo. Juan E. Alvarez Cobián


Materia: Daños y Perjuicios


     Este documento constituye un documento oficial del Tribunal
     Supremo que está sujeto a los cambios y correcciones del proceso
     de compilación y publicación oficial de las decisiones del
     Tribunal. Su distribución electrónica se hace como un servicio
     público a la comunidad.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

| | | |
|---|---|---|
| Ana Teresa López y Otros | * | |
|    Recurrida Demandantes | | |
|    Reconvenidos | * | |
| | | |
|       v. | * | CC-2000-558 |
| | | |
| Leonor Porrata Doria y Otros | * | |
|    Peticionaria Demandadas | | Certiorari |
|    Reconveniente | * | |
| | | |
|      v. | * | |
| | * | |
| Jessica Lugo Porrata Doria et al | * | |
|    Demandantes contra Terceros | | |
| | * | |
|     v. | | |
| Ricardo J. Calderón López y Otros | * | |
| Recurrida Terceros Demandados y | | |
| Demandantes contra Terceros | * | |
| | | |
|     v. | * | |
| Leonor Porrata Doria y Otros | * | |
|    Peticionaria Terceros Demandados | | |

-----------------------------------------*

Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico, a 4 de abril de 2002.

El presente recurso requiere que examinemos el ámbito de responsabilidad de los padres por los actos de sus hijos cuando aquellos

se encuentran separados por sentencia de divorcio y, aunque ambos comparten la patria potestad, sólo uno de ellos tiene su custodia. Por entender que en tales casos, en ausencia de prueba que demuestre que se actuó como un buen padre de familia, responde de ordinario el padre custodio a no ser que el hecho dañoso se cometa cuando el menor esté bajo la compañía del otro padre, en virtud del derecho de visita, confirmamos.

I

El menor Rafael Lugo Porrata Doria perdió la vida en un trágico accidente automovilístico mientras conducía un vehículo de motor en la madrugada del 21 de agosto de 1993 por una de las principales vías del país acompañado de un amigo, Ricardo Calderón López. Dicha tragedia enlutó a una familia y ocasionó el conflicto que origina este recurso. Ricardo Calderón López, también menor de edad y pasajero del referido vehículo, resultó herido en dicho accidente. Al momento de los hechos Rafael Lugo, el menor que conducía, tenía 20 años de edad y residía con su madre, Leonor Porrata Doria, quien tenía su custodia ya que ésta y el padre del menor, Justino Rafael Lugo, estaban divorciados. Sin embargo, la patria potestad era compartida por ambos padres.

A raíz de este accidente los padres del pasajero del vehículo, Ricardo Calderón López, instaron acción judicial contra la madre del menor que perdió la vida en el accidente para reclamar por las lesiones que su hijo sufrió. Así, demandaron en daños y perjuicios a la madre que perdió al menor que conducía el vehículo, Leonor Porrata Doria, alegando que, a tenor con el Artículo 1803 del Código Civil, era responsable vicariamente por las actuaciones de su hijo, quien alegadamente conducía en estado de embriaguez. Luego de varios incidentes procesales y la interposición de varias reclamaciones entre las partes, Leonor Porrata Doria presentó moción de sentencia sumaria en la cual adujo que procedía la desestimación de la demanda por no haberse demandado al padre del menor, ex esposo de ésta. Según sostuvo, procedía demandar inicialmente a éste pues, por virtud del Artículo

1803 del Código Civil, es el padre quien tiene el primer orden de responsabilidad. Además, arguyó que el padre respondía en tanto ostentaba la patria potestad compartida sobre el menor.

Tras examinar la referida moción, el Tribunal de Primera Instancia la denegó arguyendo que a tenor con la realidad social actual, (en la cual un sinnúmero de madres son jefes de familia), resulta improcedente interpretar el Artículo 1803 para establecer que es el padre quien responde en primer orden. Además, dicho foro concluyó que procedía incoar la acción en contra de la madre, Leonor Porrata Doria, pues el menor vivía bajo su custodia y compañía y la responsabilidad que establece el referido artículo es por los actos de los menores que viven en compañía de los padres.

Inconforme, Leonor Porrata Doria acudió al Tribunal de Circuito de Apelaciones aduciendo que erró el foro de instancia al no desestimar la demanda. Por su parte, el tribunal apelativo denegó el remedio solicitado tras validar el razonamiento del foro recurrido y señalar que la responsabilidad vicaria de los padres se encuentra limitada a los actos de los hijos que vivan en su compañía. Por ello, dicho foro concluyó que, en vista que el menor residía en compañía de la madre, no era necesario demandar al padre pues ella era la responsable por sus actuaciones.

De este dictamen recurre Leonor Porrata Doria ante nos reproduciendo, en esencia, los argumentos esbozados ante los foros recurridos. Así, sostiene que procede desestimar la demanda en vista que: (i) el Artículo 1803 fija al padre como primer responsable y; (ii) la responsabilidad del padre surge por virtud de la patria potestad compartida que ostenta sobre el menor. Luego de expedir el auto solicitado y examinar las comparecencias de las partes, resolvemos.

II

El Artículo 1803 del Código Civil, 31 L.P.R.A. sec. 5142, dispone, en lo pertinente:

> La obligación que impone el artículo anterior [Artículo 1802] es exigible, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder.

El padre y por muerte o incapacidad de éste, la madre, son responsables de los perjuicios causados por los hijos menores de edad que viven en su compañía. [...]

La responsabilidad de que trata este artículo cesará cuando las personas en ella mencionadas prueben que emplearon toda la diligencia de un buen padre de familia para prevenir el daño.

**Cabe aclarar, de entrada, dos asuntos con respecto al artículo que nos concierne. Primero, debemos determinar quienes son los "sujetos responsables" conforme al citado precepto; esto es, si por los actos de los hijos responden ambos padres o sólo uno de ellos. De otra parte, es preciso examinar el ámbito de responsabilidad de los padres cuando estos se encuentran separados por sentencia de divorcio y, aunque ambos comparten la patria potestad sobre el menor, sólo uno de ellos tiene su custodia. Veamos.**

**Con respecto al primer asunto, la doctrina ya precisaba que el referido artículo no limita la responsabilidad de la madre sólo a aquellas situaciones de "muerte o incapacidad" del padre. Así, Puig Peña aclaraba que existían otros supuestos en los que una madre sería responsable por los actos de los hijos.[1] De esta manera señalaba que había que darle un significado amplio al término "incapacidad", comprensivo de todos aquellos supuestos en los que el padre no pudiera proveer la guarda del menor.[2]**

**La situación quedó resuelta definitivamente en España mediante legislación apoyada en la reforma del régimen de la patria potestad.[3] Así, el Artículo 1903 del Código Civil Español se enmendó para que leyese, en lo pertinente: "Los padres son responsables de los daños causados por los hijos que se encuentren bajo su guarda". Como explica De Ángel Yágüez, al existir una patria potestad conjunta, compartida por padre y madre,**

---

[1] Federico Puig Peña, <u>Tratado de Derecho Civil Español</u>, Tomo IV, Vol. II (1973), página 686.

[2] Id.

[3] Véase, Mónica Navarro Michel, <u>La Responsabilidad Civil de los Padres por los Hechos de sus Hijos</u>, 1998, pág. 54; Ricardo De Ángel Yágüez en <u>Comentario del Código Civil</u>, coordinado por Ignacio Sierra Gil de la Cuesta, Tomo 9, 2000, página 6.

se comprende "la corresponsabilidad de ambos progenitores por los daños causados por los hijos sometidos a su guarda".[4]

En nuestra jurisdicción la actual redacción del Artículo 1803 obedeció a que bajo el estado de derecho anterior la patria potestad correspondía en primer término al padre.[5] Ahora bien, por virtud de la Ley Núm. 99 de 2 de junio de 1976, el Artículo 152 del Código Civil, 31 L.P.R.A. sec. 591, se enmendó para que leyese, en lo pertinente, de la siguiente forma: "La patria potestad sobre los hijos no emancipados corresponde, a ambos padres conjuntamente[.]" A pesar de esto, el Artículo 1803 no sufrió cambio alguno y continuó con su redacción original. Surge, pues, la siguiente interrogante: ¿procede imponer un primer orden de responsabilidad contra los padres y secundario contra las madres? Entendemos que no.

A tenor con la reforma del régimen de la patria potestad debe considerarse modificado el Artículo 1803 para hacer igualmente responsable a ambos padres por las actuaciones de sus hijos en las circunstancias que este artículo establece.[6] Igual conclusión se exige por virtud de nuestra Constitución en vista que la misma proscribe este tipo de imposición de responsabilidad en atención exclusiva al sexo de las personas.[7] Así, procede aclarar que por virtud de los citados preceptos el Artículo 1803 debe ser leído para que sean ambos padres los responsables por las actuaciones de sus hijos en las condiciones que este impone. Igualmente, cabe destacar que esta responsabilidad será solidaria.[8] De

---

[4] Ricardo De Ángel Yágüez en Comentario del Código Civil, supra a la pág. 6.

[5] Carlos Irizarry Yunque, Responsabilidad Civil Extracontractual, 4ta Ed. (2000), pág. 553.

[6] Id.

[7] Véase, Art. II. secs. 1 y 7 de nuestra Constitución.

[8] Véase, Carlos Irizarry Yunque, supra a la pág. 553; José Puig Brutau, Fundamentos de Derecho Civil, Barcelona, Ed. Bosch, 1984, T.II, Vol. III, pág. 109; Jaime Santos Briz en Comentarios al Código Civil y Compilaciones Forales, dirigidos por Manuel Albaladejo, Tomo XXIV, (1984), Pág. 571 y; Carmen López Beltrán de Heredia, La Responsabilidad Civil de los Padres por los Hechos de sus Hijos, pág. 116.

esta forma, la persona afectada por el acto dañoso podrá dirigir su acción contra los dos (2) padres o contra cualquiera de ellos solidariamente.[9]

Ahora bien, el caso de autos plantea una peculiaridad adicional que nunca antes habíamos atendido y que nos lleva a discutir el segundo asunto previamente señalado; a saber, el ámbito de responsabilidad de padres divorciados. Para esto es necesario que dilucidemos el fundamento de la responsabilidad paterna con especial atención al rol que desempeña la "convivencia" (esto es, la vida en compañía) al imponer responsabilidad.

## A

Santos Briz indica que el fundamento de la responsabilidad impuesta por el artículo objeto de examen es la culpa *in vigilando* en que incurren los padres.[10] La doctrina tradicional explica que el Artículo 1803, en lo aquí pertinente, formula una presunción *iuris tantum* de que por parte de los padres ha existido culpa *in vigilando*; es decir, negligencia en el control del comportamiento de los hijos.[11] De esta manera, añade Santos Briz,[12] la responsabilidad es por la acción u omisión propia de los padres pues se establece por incumplimiento de los deberes que imponen las relaciones de convivencia social de vigilar a las personas que están bajo la dependencia de otras.

No obstante, cabe destacar que la responsabilidad por hecho ajeno, anclada en el sistema subjetivista que sigue el Código Civil, viene siendo revestida por la doctrina y la jurisprudencia española de cierto matiz objetivista.[13] A pesar de esto, nunca hemos caracterizado la referida responsabilidad como objetiva. Así, siguiendo la doctrina tradicional, hemos señalado que la responsabilidad de los padres se basa en su propia culpa o negligencia y que la causa de la obligación impuesta no es "la

---

[9] Id.

[10] Santos Briz, <u>La Responsabilidad Civil: Derecho Sustantivo y Derecho Procesal</u>, 7ma ed. 1993, página 483. Véase, también, José Castán Tobeñas, <u>Derecho Civil Español, Común y Foral</u>, Tomo IV, (1985), págs. 961-962.

[11] Ricardo De Ángel Yágüez, <u>Comentario del Código Civil</u>, supra a la página 7. Véase, también José Puig Brutau, supra, pág. 106.

[12] Jaime Santos Briz, <u>Comentarios al Código Civil y Compilaciones Forales</u>, supra a las págs. 562 y 567. Véase, también, José Castán Tobeñas, supra a la pág. 962.

necesidad de que haya quien responda del daño causado por el que no tiene personalidad ni garantías de solvencia para responder por sí, sino el incumplimiento implícito o supuesto de los deberes de precaución y de prudencia que imponen los vínculos civiles que unen al obligado con las personas por quienes debe reparar el mal causado". Laureano Pérez v. Soto, 141 D.P.R. 77, 86-87 (1996), citando a Rogel Vide. A igual conclusión llegamos en Cruz Rivera v. Rivera, 73 D.P.R. 682, 686 (1952), en donde afirmamos que la "culpa o negligencia de los padres guarda relación con su deber de ejercer vigilancia sobre los hijos menores de edad que vivan en su compañía, de imponer la debida disciplina sobre sus hijos y de suministrarles una educación y un ambiente adecuado".

Claro está, los padres pueden rebatir la presunción de culpa que contra ellos opera mediante prueba demostrativa de que cumplieron con los deberes de vigilancia. Esto pues, como la responsabilidad por hecho ajeno se funda en una presunción de culpa, que puede, en ciertos casos, no corresponder con la realidad, el Código añade que la misma cesa cuando las personas a quienes se le atribuye "prueben que emplearon toda la diligencia de un buen padre de familia para prevenir el daño"; Artículo 1803, último apartado. José Castán Tobeñas, Derecho Civil Español, Común y Foral, Tomo IV, (1993), págs. 972-973. Por ello hemos señalado que la responsabilidad de los padres, por las actuaciones de sus hijos menores de edad, no es absoluta y que aquellos no son garantizadores *sine qua non* de las actuaciones de sus hijos. Por supuesto, cada caso específico debe medirse por sus circunstancias especiales, y los hechos de cada caso deben ser considerados a los fines de determinar si hubo negligencia de parte de los padres; esto es, si las actuaciones del hijo se deben al incumplimiento por el padre de su deber de vigilancia, represión, disciplina y educación. Véase, Laureano Pérez v. Soto, 141 D.P.R. 77, 87 (1996); Cruz Rivera v. Rivera, 73 D.P.R. 682, 689 (1952).

---

[13] Jaime Santos Briz, Comentarios al Código Civil y Compilaciones Forales, supra a la pág. 564.

**Así, la prueba liberatoria que deben presentar los padres, para demostrar que han cumplido con sus deberes de vigilancia, represión, disciplina y educación, dependerá de las circunstancias del caso. Ahora bien, aunque dicha prueba no se evalúa a la luz de criterios estrictos e inflexibles formulados *a priori*, hemos afirmado que los "padres quedan libres desde que demuestran que un individuo normal hubiera educado y vigilado a su hijo como ellos educaron y vigilaron al suyo". <u>Alvarez Irizarry v. Irizarry Morales</u>, 80 D.P.R. 63, 69 (1957).**

**Habiendo aclarado que el fundamento de la responsabilidad objeto de estudio es la culpa *in vigilando* en que incurren los padres y que la misma cesa cuando los padres la rebaten, resta examinar aquella parte del Artículo 1803 que indica que los padres son responsables de los perjuicios causados por los hijos menores de edad "que viven en su compañía" para determinar si la "convivencia" con el menor es un requisito para la imposición de responsabilidad.**

**B**

Aunque la doctrina no se encuentra unánime sobre el particular, un amplio sector de ésta estima que si la responsabilidad de los padres está basada en la culpa *in vigilando*, la "convivencia" es indispensable.[14] Esto pues, como explica Diez-Picazo, "el padre que no viva con su hijo no lo puede guardar".[15] En la medida que el fundamento de la responsabilidad sea la culpa *in vigilando* de los propios padres, lógico será, como requisito para fijar responsabilidad, establecer la posibilidad de ejercitar este deber exigiendo la convivencia entre padres e hijos.[16] Por ello, se ha dicho que la "convivencia" es un requisito que establece la posibilidad del ejercicio del deber de vigilar.[17] A tales efectos, véase: Q.M. Scaevola, <u>Código Civil</u>,

---

[14] Mónica Navarro Michel, supra a la pág. 63. Véase, también, Carmen López Beltrán de Heredia, supra a la pág. 73.

**[15] Diez-Picazo y Antonio Gullón, <u>Sistema de Derecho Civil</u>, Vol. II, 4ta ed., pág. 645 (1986).**

[16] Cándido Conde-Pumpido Ferreiro, <u>Los Problema de la Responsabilidad Civil por los Hechos Ilícitos de los Incapaces</u>, en Estudios de Derecho Civil en Honor del Prof. Castán Tobeñas, Vol. II, 1969, pág. 87

[17] Id.

Madrid, Ed. Reus, 1974, T. XXXI, pág. 563. (la convivencia es requisito); Puig Peña, Tratado de Derecho Civil Español, Tomo IV, Vol. II (1973), pág. 685 (vida en compañía es requisito); José Luis Lacruz Berdejo, Elementos de Derecho Civil, Tomo II, Vol. I, 1977, pág. 241, (la convivencia es un presupuesto de la responsabilidad del guardador); Santos Briz, La Responsabilidad Civil: Derecho Sustantivo y Derecho Procesal, 7ma ed. 1993, página 497, (artículo exige que menores convivan con sus padres).

Igual conclusión se deriva de nuestra jurisprudencia, la cual, apoyada en el texto del Artículo 1803, ha venido resaltando la importancia de que el hijo viva en compañía del padre. Así, en Rodríguez v. Santos, 40 D.P.R. 48 (1929), al interpretar el Artículo 1804 del Código Civil de 1902, equivalente al Artículo 1803 del Código actual, señalamos que el citado precepto "habla de los hijos que vivan en compañía del padre; esto es, en términos lógicos, al alcance de su autoridad para reprimir, y de su consejo para dirigir. La ley no habla exclusivamente de los que estén bajo la potestad paterna; distinguiendo así entre el derecho, o deber, de la patria potestad en abstracto, y su ejercicio real y efectivo." Rodríguez v. Santos, 40 D.P.R. 48, 52 (1929); véase, también, Pacheco v. Pomales, 55 D.P.R. 341 (1939).

De la misma forma, en Sociedad de Gananciales v. Cruz Menéndez, 78 D.P.R. 349, 361 (1955) aclaramos que el Artículo 1803 requiere que el menor viva en compañía de su padre al tiempo de ocurrir el accidente. Así, indicamos que se exige "que el hijo esté al alcance de la autoridad del padre para reprimir y de su consejo para dirigir".[18] Igualmente, en Cruz Rivera v. Rivera, 73 D.P.R. 682, 687 (1952), citando a Antonio Borrel Maciá, señalamos que "el padre es responsable de los actos de sus hijos mientras están en su potestad, viven en su compañía y, por consiguiente, puede vigilarlos."

A tenor con estas exigencias, en tales casos eximimos de responsabilidad a los padres cuando se demostró que sus hijos no vivían en su compañía, evidenciando así la importancia de la "convivencia" para

imponer responsabilidad.[19]  Por supuesto, la "convivencia" no ha de tenerse en su sentido literal, sin que sea necesario que el padre se encuentre físicamente presente cuando ocurre el daño.[20] Lo importante, al producirse una falta de convivencia, será examinar las causas que la motivaron, de suerte que se dilucide si su ausencia fue legítima.[21]

En fin, de un examen de nuestra jurisprudencia y de la doctrina pertinente, y a la luz de las claras disposiciones del Artículo 1803, concluimos que la "convivencia" es un requisito para la imposición de responsabilidad paterna.  Claro está, el que la "convivencia" sea un presupuesto de responsabilidad no implica que por el mero hecho de ostentarla un padre adviene automáticamente responsable por las actuaciones de sus hijos menores de edad pues, por virtud del propio Artículo, la responsabilidad por hecho ajeno cesa cuando éste pruebe que empleó "toda la diligencia de un buen padre de familia para prevenir el daño"; Artículo 1803, último apartado. Así, debe quedar claro que la "convivencia" es un requisito para la imposición de responsabilidad pero no la establece *per se* pues la misma cesa al rebatirse la presunción de culpa *in vigilando.*

Ahora bien, ante tales conclusiones cabe formular una pregunta adicional; ¿cómo fijar responsabilidad en casos de padres divorciados? Somos del parecer que por virtud del citado artículo y la literatura jurídica aplicable, procede afirmar que en vista que la "convivencia" es un requisito para la imposición de responsabilidad paterna, lógico es que en los casos de padres divorciados se fije responsabilidad en aquel cónyuge en cuya compañía vive el menor.[22]  Veamos.

C

---

[18] Sociedad de Gananciales, supra a la pág. 361.
[19] Véase, por ejemplo, Rodríguez v. Santos, 40 D.P.R. 48 91929) y; Pacheco v. Pomales, 55 D.P.R. 341 (1939).
[20] Carmen López Beltrán de Heredia, supra a la pág. 76.
[21] Carmen López Beltrán de Heredia, supra a la pág. 75.
[22] Véase, Carlos Irizarry Yunque, supra a la pág. 553.

Una de los efectos de la sentencia de divorcio es determinar con cuál de los cónyuges van a convivir los hijos.[23]  Así, el Artículo 107 del Código Civil, 31 L.P.R.A. sec. 383, dispone, en lo pertinente:

> En todos los casos de divorcio los hijos menores serán puestos bajo el cuidado y la patria potestad del cónyuge que el Tribunal, en el ejercicio de su sana discreción, considere que los mejores intereses y bienestar del menor quedarán mejor servidos; pero el otro cónyuge tendrá derecho a continuar las relaciones de familia con sus hijos, en la manera y extensión que acuerde el Tribunal al dictar sentencia de divorcio, según los casos.

El progenitor que no obtenga la custodia podrá obtener un derecho, llamado genéricamente de visita, que le permitirá visitar a sus hijos, comunicarse con ellos y tenerlos en su compañía.[24]  Como dijimos en Sterzinger v. Ramírez, 116 D.P.R. 762, 776 (1985), el "derecho del padre o madre no custodio a relacionarse con sus hijos menores tiene la naturaleza de un derecho-deber de su titular, ya que está pensado y concebido no sólo para su propio beneficio, sino eminentemente en beneficio del menor.  Durante la custodia física temporera en que el padre no custodio tiene al menor en su compañía, éste tiene deberes implícitos al ejercicio de su derecho:  el de alimentarlo, dispensarle una acogida cálida y trato afectuoso, cuidarlo con la diligencia adecuada y velar por su salud física y psíquica".

Ante esta realidad, ¿cómo fijar responsabilidad por los actos de menores cuyos padres estén divorciados?  En este tipo de casos, un sector de la doctrina estima que si se sigue el criterio de la culpa *in vigilando* la responsabilidad sería del cónyuge con el que se halle el menor en el momento en que ocurre el acto dañoso[25]; esto es, será responsable el padre en cuya compañía vive el menor a menos que demuestre que empleó "toda la diligencia de un buen padre de familia para prevenir el daño".  Así, afirma Diez-Picazo que en casos de padres divorciados, responde el padre en cuya compañía vive el menor.[26] Explica Mónica Navarro Michel, que a tenor con

---

[23] Mónica Navarro Michel, supra a la pág. 70.
[24] Id.
[25] Ricardo De Ángel Yágüez, La Responsabilidad Civil, 1988, pág. 127.
[26] Diez-Picazo y Antonio Gullón, Sistema de Derecho Civil, Vol. II, pág. 478, 1976.

esta corriente, denominada teoría del traspaso de responsabilidad, se sostiene que la responsabilidad se traspasa con el menor y responde el padre que lo tenga en el momento de la comisión del acto culposo.[27] De esta forma, si el menor produce el daño estando con el padre custodio responderá éste y el que tiene el derecho de visita queda liberado. Si, por el contrario, el menor ocasiona un daño mientras está con el padre que tiene el derecho de visita, de ordinario responderá éste. Similar planteamiento presenta Silvia Díaz Alabart[28] al indicar que el responsable por los daños causados por el hijo, en el caso de padres divorciados, sería el padre con el que convive el menor.[29] Por supuesto, como hemos enfatizado, el que se utilice la "vida en compañía" como presupuesto de responsabilidad no implica que quien la ostente responderá automáticamente pues dicho progenitor siempre puede rebatir la presunción demostrando que ejerció toda la diligencia de un buen padre de familia para prevenir el daño.

En vista que la convivencia es presupuesto de la responsabilidad paterna, ya que la misma se asienta sobre la culpa *in vigilando*[30], entendemos que la teoría del traspaso responsabilidad delimita adecuadamente el ámbito de responsabilidad de los padres en circunstancias como la que nos ocupa. Así, en casos de divorcio, de ordinario responderá por los hechos de los hijos el progenitor a quien corresponda la custodia del menor, excepto si el hecho dañoso se comete cuando el menor "convive" con el otro padre, en virtud del derecho de visita, pues este derecho transfiere la custodia y el deber de vigilar al menor durante los periodos de tiempo en que tenga lugar.[31] Ciertamente, el padre no custodio, quien se relaciona con su hijo por virtud del derecho de visita, tendrá al menor en su "compañía" por los periodos de tiempo que la misma perdure y responderá a tenor con el Artículo 1803. De otra parte, en tales casos la ausencia de "compañía" del padre custodio será legitima pues la misma

---

[27] Mónica Navarro Michel, supra a la pág. 72.

[28] Silvia Díaz Alabart, <u>La Responsabilidad por los Actos Ilícitos Dañosos de los Sometidos a Patria Potestad o Tutela</u>, A.D.C., 1987, pág. 795, 823.

[29] Id.

[30] Véase, Carmen López Beltrán de Heredia, supra a la pág. 73.

[31] Carmen López Beltrán de Heredia, supra a la pág. 132.

se basa en el derecho que tiene el otro progenitor a relacionarse con su hijo.

Por supuesto, y según ya hemos repetido, la "convivencia" no ha de tenerse en un sentido estricto pues dicho concepto no es uno rígido ni de contornos exactos. Por el contrario, para determinar con cual padre convive un menor, cuando estos estén separados por sentencia de divorcio, habrá que atender los hechos particulares de cada caso pues si bien es cierto que en ocasiones dicha tarea será de fácil solución, existirán otras en que no será ese el caso; incluso pudiendo darse circunstancias en las que sea posible que se entienda que un menor convive con ambos padres aun cuando estos estén divorciados.

No obstante, el que nos encontremos ante un concepto con cierto grado de plasticidad no implica que no podamos hacer ciertas generalizaciones. De esta forma, procede afirmar que el concepto "vida en compañía" no significa que el progenitor debe encontrarse con el menor en el preciso momento en que ocurre el accidente. Igualmente, debemos reconocer que la "vida en compañía" con un hijo en casos de padres divorciados no se desarrolla bajo líneas de convivencia estricta, sin que se requiera que un menor pernocte por determinado número de noches en casa de su progenitor para que se pueda entender que "convive" con éste. El concepto de "vida en compañía" es uno que requiere la formulación de un análisis fáctico de cada caso para así atender la infinita complejidad de asuntos que en estos pueden surgir. A los fines de cumplir con su tarea adjudicativa en tales casos, los foros de instancia podrán comenzar su examen a partir de los decretos judiciales que regulen los derechos de visitas de los menores y forjar su análisis a tenor con las circunstancias fácticas de cada caso para así determinar con quien "convive" el menor cuando ocurre el daño.

En fin, en este tipo de casos procede determinar, en primer lugar, con quien "convivía" el menor al cometer el daño. Para tal tarea los foros de instancia deben estar conscientes de que el concepto de la convivencia no se caracteriza por su desmedida rigidez sino que se concretiza a tenor

**con las circunstancias de cada caso aunque, ciertamente, los aludidos foros podrán comenzar su análisis a partir de los decretos judiciales que regulan los derechos de visita. Una vez determinada la convivencia, procede liberar al progenitor con quien no convivía el menor, (si este es el caso) y responsabilizar al otro padre a menos que éste demuestre, a tenor con el Artículo 1803, que empleó "toda la diligencia de un buen padre de familia para prevenir el daño".**

**A la luz de esta normativa, pasemos a discutir la situación que tenemos ante nos.**

### III

De entrada cabe aclarar que en el presente recurso no pasamos juicio sobre los meritos de la acción instada pues el único asunto que debemos dilucidar es si procede desestimar la misma, según nos solicita la parte demandada, por el sólo hecho de no incluirse en el procedimiento de autos al padre del menor sino únicamente a su madre.[32] De un examen de la doctrina aplicable, concluimos que no erraron los foros recurridos al negarse a desestimar la referida demanda por dicha omisión. Veamos.

La peticionaria ampara su solicitud de desestimación en una interpretación literal del Artículo 1803 para argumentar que éste formula un orden de responsabilidad taxativo; fijando así, como primer responsable, al padre. No obstante, ya hemos precisado que dicha interpretación es improcedente y que ambos padres responden por los actos de sus hijos en las circunstancias que el Artículo 1803 establece.

De otra parte, el segundo argumento de la peticionaria, a los efectos que procede imponer responsabilidad a un progenitor por el sólo hecho de ostentar la patria potestad sobre su hijo, también debe ser descartado. Como hemos puntualizado, la situación de autos se rige a la luz de los claros preceptos del Artículo 1803, el cual establece que los padres responderán

---

[32] Por ello, aunque en el caso de autos la controversia en sus meritos gira en torno a la doctrina de la negligencia de conductores y pasajeros en vehículos de motor no es necesario que abordemos la misma a la luz de lo resuelto en Vélez Rodríguez v. Amaro Cora, 138 D.P.R. 182 (1995) y Acosta v. Crespo, 70 D.P.R. 239 (1949).

de "los perjuicios causados por los hijos menores de edad **que viven en su compañía**"; (Énfasis suplido). Precisamente, el legislador delimitó las circunstancias particulares que tendrían que operar para que un progenitor advenga responsable por los actos de sus hijos, requiriendo la "vida en compañía" y no meramente la "patria potestad". El Artículo 1803 es un precepto específico que formula los requisitos para la imposición de responsabilidad paterna por daños a terceros, por lo que no tenemos que acudir a las disposiciones generales que regulan la figura de la patria potestad.

**Sobre estos aspectos ya nos habíamos pronunciado en <u>Rodríguez v. Santos</u>, *supra*, cuando advertimos la improcedencia de utilizar la figura de la patria potestad para formular la responsabilidad paterna más allá de los claros perímetros que fijó el legislador. Así, establecimos:**

> La parte apelante confunde las obligaciones que nacen de uno y otro artículo [el Artículo 153 sobre patria potestad y el Artículo 1803]. Las del 1804 [1803 actual], son, en general, con referencia a terceras personas; son de responsabilidad para con otros. Las del 223 [153 actual], son relaciones del orden paterno-filial, entre el genitor y su prole, y de orden familiar, en las que la sociedad organizada interviene solamente para el mantenimiento y regulación de la institución "familia". En lo que afecta a la relación con los extraños a ese pequeño Estado, rige, en su especialidad, el artículo 1804 [1803 actual]. Pero el artículo 223 [153 actual] del Código Civil, no va más allá de las fronteras de la familia.

La responsabilidad que impone el Artículo 1803 está basada en la culpa i*n vigilando* y no en el mero hecho de ostentar la patria potestad. El Artículo 1803 "no habla exclusivamente de los que estén bajo la potestad paterna; distinguiendo así entre el derecho, o deber, de la patria potestad en abstracto, y su ejercicio real y efectivo". <u>Rodríguez v. Santos</u>, 40 D.P.R. 48, 52 (1929). De esta manera, no es el hecho objetivo de la patria potestad el fundamento de la responsabilidad sino el incumplimiento de los padres de su deber de vigilancia sobre sus hijos; deber que para poder ser efectivo requiere, como indica el propio artículo, que el hijo viva en "compañía" de los padres.

Precisamente, hemos liberado de responsabilidad a padres cuando, a pesar de ostentar la patria potestad, sus hijos no vivían en su compañía.[33] Así, la responsabilidad surge en virtud de la culpa independiente de los padres y no del hecho en sí de la paternidad. De lo contrario, de prescindir de la culpa subjetiva de los padres y formular responsabilidad sólo por el hecho objetivo de la paternidad, fijaríamos un sistema de responsabilidad que el propio artículo rechaza. A tenor con el mismo, la responsabilidad objeto de estudio exige la infracción de los deberes de vigilancia impuestos y la posibilidad de llevarlos a cabo; esto es, la "convivencia" entre padres e hijos. Ignorar tales requisitos, para entrar en un sistema de atribución de responsabilidad por la mera existencia de la patria potestad, sería un curso de acción que no le compete a este Foro establecer.[34] Estimamos improcedente imponer exigencias adicionales a un texto legal cuando las mismas no son compelidas por la Constitución.

Claramente, el legislador delimitó las circunstancias en las que sería legitimo imponer responsabilidad a los padres por los actos de sus hijos a la luz de la "convivencia" y no al amparo de la figura de la patria potestad. En vista que un curso de acción que pretenda modificar dicho régimen de responsabilidad le compete a la Asamblea Legislativa, procede rechazar el segundo argumento de la peticionaria.

De los autos se desprende que el menor residía con su madre, Leonor Porrata Doria, al momento del trágico accidente que le costó su vida y que ésta tenía su custodia. A la luz de estos hechos, no procede desestimar la demanda incoada por los padres del pasajero del vehículo. Ya hemos mencionado que la persona afectada por el acto dañoso de un menor podrá dirigir su acción contra los dos (2) padres o contra cualquiera de ellos solidariamente. Precisamente, esto último fue lo que ocurrió en el presente caso. Una vez entablada la acción procedía que se dilucidara con quien

---

[33] Rodríguez v. Santos, 40 D.P.R. 48 (1929); Pacheco v. Pomales, 55 D.P.R. 341 (1939).

[34] A tales efectos, tomamos conocimiento judicial de que precisamente en estos momentos la Rama Legislativa se encuentra revisando nuestro Código Civil a través de la "Comisión Conjunta Permanente para la Revisión y Reforma

"convivía" el menor al ocurrir el lamentable accidente. En vista que de los documentos que obran ante nos no se desprende que el menor viviese en compañía de su padre al ocurrir el accidente, no erraron los foros recurridos al negarse a desestimar la demanda.

Ahora bien, lo antes dicho no significa que la madre demandada no pueda argumentar que se le deba eximir de responsabilidad si demuestra que cumplió con los deberes que el ordenamiento le impone; esto es, que rebata la presunción de culpa *in vigilando* que obraría en su contra con respecto al menor que vivía en su compañía.

En vista de lo anterior, procede confirmar el dictamen del tribunal apelativo. Se devuelve el caso al tribunal de primera instancia para que continúen los procedimientos conforme lo aquí resuelto.

**Se dictará la Sentencia correspondiente.**


**Federico Hernández Denton**
Juez Asociado

---

del Código Civil de Puerto Rico". Véase, Ley Núm. 85 del 16 de Agosto de 1997; 2 L.P.R.A. secs. 141 et seq.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**


Ana Teresa López y Otros                    *

    Recurrida Demandantes

    Reconvenidos                          *


        v.                              *        CC-2000-558


Leonor Porrata Doria y Otros                *

    Peticionaria Demandadas                          Certiorari

    Reconveniente                         *


        v.                              *

                          *

Jessica Lugo Porrata Doria et al            *

    Demandantes contra Terceros

                          *

       v.

Ricardo J. Calderón López y Otros           *

Recurrida Terceros Demandados y

Demandantes contra Terceros                 *


       v.                               *

Leonor Porrata Doria y Otros                *

    Peticionaria Terceros Demandados

————————————————————————————————————————*


SENTENCIA


San Juan, Puerto Rico, a 4 de abril de 2002.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integral de la presente, se confirma el dictamen del Tribunal de Circuito de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de forma compatible con lo aquí resuelto.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina.  El Juez Asociado señor Fuster Berlingeri emitió Opinión Disidente a la que se une el Juez Presidente señor Andréu García y la Juez Asociada señora Naveira de Rodón.


Carmen E. Cruz Rivera
Secretaria del Tribunal Supremo Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ana Teresa López y Otros            *
    Recurrida-Demandantes           *
    Reconvenidos                    *
                                    *
            vs.                     *            CC-2000-558
                                    *
Leonor Porrata Doria y Otros        *
    Peticionarios-Demandados        *
    Reconvenientes                  *
                                    *
            vs.                     *
                                    *
Jessica Lugo Porrata Doria Et Als.  *
    Demandantes-Contra Terceros     *            Certiorari
                                    *
            vs.                     *
                                    *
Ricardo J. Calderón López y Otros   *
    Recurridos Terceros Demandados  *
    y Demandantes Contra Terceros   *
                                    *
            vs.                     *
                                    *
Leonor Porrata Doria Et Als.        *
    Peticionaria Terceros Demandados *
                                    *
* * * * * * * * * * * * * * * * * * *

Opinión Disidente emitida por el Juez Asociado señor FUSTER BERLINGERI, a la cual se unen el Juez Presidente señor ANDREU GARCIA y la Jueza Asociada señora NAVEIRA DE RODON.


San Juan, Puerto Rico, a 4 de abril de 2002.


    Una vez más me siento obligado a afirmar mi convicción de que la función interpretativa de este Tribunal como máximo foro judicial del país no debe realizarse meramente a través del manejo lógico de conceptos normativos. A la altura de nuestros tiempos parece trillado señalar que aunque el Derecho tiene una estructura formal de principios y preceptos jurídicos, es algo más que toda esa estructura: el Derecho "es un instrumento para la vida social en vista

a realizar fines humanos, dentro de las rutas varias y cambiantes de la historia".[35] El derecho positivo es un conjunto de medios normativos construidos por seres humanos para producir soluciones a determinados problemas de convivencia social, soluciones que se reputan justas y útiles para el bien común. Por ello, al interpretar el derecho positivo, los jueces de este Foro tenemos la responsabilidad de adaptar los preceptos legales a las realidades prácticas de la vida social, buscando soluciones a los problemas colectivos subyacentes en los casos ante nuestra consideración, guiados en esa tarea por las convicciones y los valores compartidos que predominan en la sociedad sobre lo que es justo y lo que constituye el bien común. Incumbe al juez, como diría Castán en su muy conocida y citada expresión, reconstruir el derecho positivo, integrarlo con soluciones nuevas a tono con las emergentes necesidades sociales, adaptarlo a la vida y rejuvenecerlo.[36] O como ha señalado Pizarro Crespo, "el juez debe obediencia a la ley, y la mayor manera de servirla es la de realizarla en su idea animadora, esto es, en la justicia que constituye su más profundo contenido".[37]

En el caso de autos, la mayoría de este Tribunal procura llenar la laguna legislativa que encaramos aquí manejando con clara lógica formal los conceptos normativos pertinentes. No obstante, llega a un **resultado** que en mi criterio no está a la altura del reto que el caso en cuestión nos presenta. No acomoda bien varios importantes intereses sociales presentes en el caso que ameritan protección. Veamos.

## II

En el caso de autos, la mayoría del Tribunal resuelve que en casos en que los padres de un menor están divorciados, aunque éstos compartan la patria potestad con respecto al menor, sólo será responsable de los actos

---

[35] Cita del Dr. Recasens Siches describiendo el pensamiento de Roscoe Pound, en *Filosofía del Derecho*, México, 1961, pág. 636.

[36] J. Castán Tobeñas, *La Formulación Judicial del Derecho*, Madrid, 1954, págs. 25-26.

[37] *L'equita e la sua funzione nel Diritto*, en la Revista Internazionale de Filosofía del Diritto, 1927, pág.428

del menor el **padre custodio**, salvo que pueda demostrar que actuó como un buen padre de familia.

Este resultado, de responsabilizar **sólo al padre con quien convive el hijo menor de edad**, me parece inadecuado, por **cuatro razones** muy sencillas, pero de enorme importancia social y jurídica. La primera de ellas tiene que ver con los deberes morales y jurídicos de los padres. La desgraciada experiencia del divorcio tiene como consecuencia jurídica primordial la terminación del vínculo entre los cónyuges. **No extingue o disuelve las vitales relaciones que deben existir entre estos dos y sus hijos**. Como la custodia del menor no puede ser materialmente compartida, éste convive mayormente con uno de sus dos padres, pero ello no termina la relación del padre no custodio con el menor **ni lo libera de sus graves responsabilidades hacia éste**. Tanto por mandato expreso de nuestro Código Civil como por consideraciones de orden moral y del mayor interés público, los padres, custodios o no, tienen deberes fundamentales hacia los hijos que procrearon. En particular, tienen el deber de alimentarlos; **el deber de educarlos, el deber de instruirlos y de corregirlos**. Art. 153 del Código Civil, 31 L.P.R.A. sec. 601. Hemos pautado ya que estos deberes incluyen la **responsabilidad de orientar a los hijos y de inculcarles buenos hábitos de convivencia y disciplina**. Calo Morales v. Cartagena Calo, 129 D.P.R. 102, 134 (1991). En ningún lugar de nuestro ordenamiento jurídico se dispone que estos cruciales deberes de los que comparten la patria potestad le corresponden sólo al padre custodio. El divorcio no libra al padre o la madre de cumplir cabalmente con dichos deberes. **El padre no custodio no deja por ello de ser padre, ni queda relevado de su grave deber de instruir, orientar y corregir al hijo que convive mayormente con el padre custodio**.

Es menester reiterar aquí el principio medular que hemos enfatizado normativamente en varias ocasiones antes, de que tanto el padre como la madre de un menor **siempre** están obligados a velar por éste. Desde el momento en que la paternidad o la maternidad queden establecidos legalmente, surge esa fundamental obligación de los padres. Esta emana de la relación paterno-filial misma, y por tanto subsiste independientemente de que el hijo

menor viva o no en compañía de uno u otro de los padres. Incluso hemos indicado que la fundamental obligación de velar por los hijos menores recae sobre el padre y la madre legalmente establecidos como tales, tengan o no la patria potestad. El hecho legal de ser padre o madre es la más honda raíz de esa esencial obligación. <u>Chévere v. Levis II</u>, op. de 3 de noviembre de 2000, 152 D.P.R. ___, 2000 TSPR 163, 2000 JTS 175; <u>Chévere v. Levis I</u>, op. de 15 de marzo de 2000, 150 D.P.R. ___, 2000 TSPR 42, 2000 JTS 56. En efecto, como consecuencia inherente a la condición de ser padre o madre, y para que nuestra sociedad pueda permanecer en armonía con las leyes naturales, desde el momento en que nacen los hijos, los que los procrearon están obligados a sacrificarse por ellos, a procurar su felicidad, a cuidar de su educación, de su desarrollo moral, intelectual y físico, y a prepararlos, en suma, para asumir las eventualidades y responsabilidades del porvenir. Así lo hemos reconocido expresamente en nuestra jurisprudencia, por espacio de más de medio siglo. <u>Soto Cabral v E.L.A.</u>, 138 D.P.R. 298, 322-324 (1995); y, <u>Llopart v. Mesorana</u>, 49 D.P.R. 250, 254 (1935).

Conocido es que con lamentable frecuencia el padre no custodio se olvida de alimentar a los hijos menores de edad y desatiende aun más el grave deber de instruirlos, orientarlos y corregirlos. **La mayoría del Tribunal hoy agrava ese serio problema social, al no responsabilizar al padre no custodio por los actos de los hijos que no conviven mayormente con él**. En lugar de reiterar que el padre no custodio comparte con el padre custodio el sagrado deber de orientar y corregir a sus hijos comunes, **y de propiciar que el padre no custodio cumpla con dicho deber**, la mayoría libera el padre no custodio de su responsabilidad por los actos de su hijos, debilitando de ese modo también el cumplimiento por el padre no custodio del deber referido. **La decisión de la mayoría suprime un poderoso incentivo jurídico para promover que el padre no custodio cumpla con su deber**.

Más aun, la decisión de la mayoría se da al margen de lo que se conoce bien en las ciencias de la conducta. No es necesario ser un perito psicólogo para saber que con frecuencia los hijos de padres divorciados experimentan problemas de convivencia y comportamiento. **Una causa importante de ello es**

**precisamente la desatención del menor por parte del padre no custodio**. La ausencia de afecto y de interés en su formación que sufre el hijo de parte del padre no custodio que no cumple con su deber, muchas veces provoca sentimientos de inseguridad, ira, poca autoestima y rencor en el menor, que se expresan a través de un comportamiento socialmente problemático. **Con frecuencia, pues, los actos del menor que aquí nos concierne se originan precisamente en la irresponsabilidad del padre no custodio**, pero ahora la mayoría de este Tribunal decide que ese padre incumplidor no responde por dichos actos, sólo porque no tenía la custodia del menor. En lugar de poner el dedo en la llaga, la mayoría irónica e injustamente libera al padre incumplidor de la obligación de resarcir los daños ocasionados por su progenie, aunque puede haber sido precisamente dicho padre el más responsable por los actos impropios del menor.

## III

Lo señalado en el acápite anterior, nos trae directamente al segundo desacierto del decreto mayoritario. Como bien intiman varios eminentes civilistas de España, entre ellos Lacruz Berdejo,[38] es claramente injusto imponerle sólo al padre custodio la responsabilidad por los daños causados por el menor porque ello significa que el progenitor que presta más directamente sus cuidados y atención al menor, **el que se sacrifica más**, resulta ser el más responsabilizado. El padre custodio de ordinario es el más esforzado en satisfacer las necesidades y reclamos del menor. Es el que cotidianamente se desvela por procurar su bienestar. Resulta crasamente incongruente e injusto que sea precisamente el que tiene la mayor carga en la crianza del menor el que tenga que cargar también con la obligación de resarcir los daños que éste pueda ocasionar. Se le impone que dé más a quien más ha dado.

Este resultado no solamente es injusto, sino que, además, es ominoso. Sociológicamente puede constituirse en un disuasivo al esmerado

cumplimiento de los deberes de cuidado y vigilancia del padre custodio. La injusticia de la referida carga, como toda injusticia, puede resultar desmoralizante y endurecedora. Puede provocar en el agobiado padre custodio sentimientos de frustración y enojo que debiliten su compromiso con el bienestar del menor.

IV

**Existe una tercera razón por la cual estimo muy desacertado el decreto mayoritario en el caso de autos. Tiene que ver con otro de los males sociales graves de nuestra sociedad. Me refiero al discrimen contra la mujer.**

Desde hace varios años ya, este Tribunal tiene proclamada una fuerte política constitucional de lograr la igualdad entre el hombre y la mujer, y de proteger a ésta, por tantos siglos marginada, contra la aplicación discriminatoria de las normas jurídicas. Carrero Quiles v. Santiago Feliciano, 133 D.P.R. 727, 735 (1993); Toppel v. Toppel, 114 D.P.R. 775, 791 (1983). Este Tribunal debe ser puntillosamente consecuente con su propia doctrina. No puede, como una Penélope jurídica, destejer en la oscuridad de la noche lo que tejió por el día.

**Es un dato incuestionable de nuestra realidad social que la custodia de los hijos menores de edad en casos de divorcio recae primordialmente sobre la madre.** Así lo ha señalado nuestra propia Comisión Para Investigar el Discrimen Por Género en los Tribunales de Puerto Rico en su reputado informe de agosto de 1995, págs. 211-222. Así lo había señalado antes una distinguida investigadora social nuestra. Véase, Marcia Rivera Quintero, *La Adjudicación de Custodia y Patria Potestad en los Tribunales de Familia de Puerto Rico*, 39 Rev. Del Colegio de Abogados de Puerto Rico, págs. 177-200 (1978). Así lo confirman las estadísticas del Censo del Año 2000, *Perfil de Características Demográficas Generales*, U.S. Census Bureau. Véase, además, Nudelman v. Ferrer Bolívar, 107 D.P.R. 495 (1978).

---

[38] J. L. Lacruz Berdejo y otros, *Derecho De Obligaciones*, Vol. II, 3ra. Ed., Bosch, Barcelona, 1995, pág. 524; véase también R. De Angel Yagüez,

Por razón de lo anterior, el decreto mayoritario en el caso de autos significa en la práctica, **que la carga por los daños causados por los hijos menores de edad ha de recaer esencialmente sobre las madres de éstos**. Resulta así *de facto* un discrimen contra la mujer. La injusticia contra el padre custodio, a la que aludimos en el acápite III de esta opinión, ahora se transforma en una injusticia contra la mujer. Esta es la que de ordinario tiene menos recursos económicos; la que con frecuencia ha sacrificado su propio desarrollo personal o profesional por atender a los hijos; la que tiene que encarar con frecuencia el incumplimiento con las pensiones alimentarias que debe el padre. Ahora resulta que es también quien debe ocuparse **sola** del resarcimiento de los daños que causen los hijos que ambos procrearon.

El resultante discrimen por razón de género al que surge del decreto mayoritario atenta contra la maternidad misma. Se le añade así una cruz más sobre la espalda de las madres abnegadas que con tanto sacrificio laboran por criar a sus hijos solitariamente. Ha de constituir otro motivo más por lo cual crecientemente muchas de nuestra mujeres jóvenes se sienten ambivalentes en torno a la maternidad, que cada vez más se percibe, como bien lo señaló nuestra propia Comisión, como que ofrece lo mejor y lo peor de dos mundos.

Tal como hemos señalado antes, en <u>Carrero Quiles v. Santiago Feliciano</u>, *supra*, y en <u>Toppel v. Toppel</u>, *supra*, no hay razón ni en derecho ni en justicia para hacernos parte de esta nueva carga contra las mujeres madres.

V

En el caso de autos, la mayoría del Tribunal está interpretando una disposición del Código Civil que es claramente obsoleta. La propia mayoría así lo reconoce en su opinión al indicar que la actual redacción del Art. 1803 obedece al hecho de que antes la patria potestad correspondía en primer término al padre. Hoy día la patria potestad corresponde a ambos padres conjuntamente. Art. 152 del Código civil, 31 L.P.R.A. sec. 591. Por ende,

---

*Comentario del Código Civil*, tomo 9, Bosch, Barcelona 2000, pág. 15.

la propia mayoría admite que la disposición en cuestión del Art. 1803 del Código Civil **debe ser modificada** judicialmente. La mayoría del Tribunal, pues, realiza en este caso una reconstrucción judicial de la norma en cuestión y así crea una nueva norma.

No tengo reparos a que este Tribunal en un caso como el de autos lleve a cabo **la creación de nuevas normas**. Nos compete esa autoridad en casos como el de autos, según lo dispuesto en el Art. 7 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 7. **Mis reparos se refieren a la norma inadecuada que la mayoría de este Foro escoge**. Con la misma autoridad que la mayoría crea la nueva norma en cuestión pudo haber adoptado otra norma socialmente más atinada y jurídicamente más justificable.

En efecto, el esquema original del Art. 1803, como el que existe ahora en España de donde proviene nuestro Código Civil, se apoya en la patria potestad para fijar la responsabilidad de los padres por los daños ocasionados por sus hijos. Es decir, los padres son responsables porque tienen la patria potestad. El deber de los padres de instruir a los hijos, de imponerles la debida disciplina y de corregirlos es una de las obligaciones correlativas de la patria potestad. Así lo dispone expresamente el Código Civil, y así lo hemos resuelto antes. Torres, Ex Parte, 118 D.P.R. 469, 474-477 (1987). Más aun, este Tribunal reiteradamente ha relacionado **la responsabilidad paternal con la autoridad paternal**. Si el hijo menor está al alcance de la autoridad del padre, éste es responsable por sus actos. Álvarez v. Irizarry, 80 D.P.R. 63 (1957); Sociedad Gananciales, Etc. v. Cruz, 78 D.P.R. 349 (1955); Cruz v. Rivera, 73 D.P.R. 682 (1952); Rodríguez v. Santos, 40 D.P.R. 48 (1929). Ya antes, incluso, habíamos intimado que si un padre **abandonaba** a un hijo menor, su responsabilidad por los actos de éste **no cesaba**. Rodríguez v. Santos, *supra*. Como corolario inescapable de lo anterior, cuando la patria potestad es compartida, **le corresponde a ambos progenitores la responsabilidad por los daños causados por sus hijos**. Así debe ser, aunque haya mediado un divorcio, que si bien rompe el vínculo entre los padres, no afecta la patria potestad que sigue compartida por el padre y la madre. Ambos, padre y madre, continúan teniendo la autoridad fundamental

sobre sus hijos menores, aunque se hayan divorciado. Ambos, pues, comparten igualmente la responsabilidad por los actos de ellos, salvo que puedan demostrar que actuaron diligentemente al ejercer dicha autoridad.

A la luz de lo anterior, pues, es evidente que el dictamen de la mayoría del Tribunal en el caso de autos es claramente cuestionable aun desde el punto de vista técnico-jurídico. Ciertamente no es compatible con la propia jurisprudencia de este Foro, citada antes, ni con el esquema fundamental del Código Civil sobre el particular.

## VI

Es por todo lo anterior que **disiento** del dictamen de la mayoría del Tribunal en el caso de autos.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO